WATSON ET UX. *v.* EMPLOYERS LIABILITY
ASSURANCE CORPORATION, LTD. ET AL.

No. 6.   Argued October 14, 1954.—Decided December 6, 1954.

*Richard H. Switzer* and *Cleve Burton* argued the cause
for appellants-petitioners.   With them on the brief was
*Val Irion.*

*Benjamin C. King* argued the cause for the Employers Liability Assurance Corporation, Ltd., appellee-respondent. With him on the brief was *Charles D. Egan.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Louisiana has an insurance code which comprehensively regulates the business of insurance in all its phases.[1] This case brings to us challenges to the constitutionality of certain provisions of that code allowing injured persons to bring direct actions against liability insurance companies that have issued policies contracting to pay liabilities imposed on persons who inflict injury. Cf. *Lumbermen's Mutual Casualty Co.* v. *Elbert,* decided today, *ante,* p. 48. This is such a direct action brought by the appellants, Mr. and Mrs. Watson, in a Louisiana state court claiming damages against the appellee, Employers Liability Assurance Corporation, Ltd., on account of alleged personal injuries suffered by Mrs. Watson. The complaint charged that the injuries occurred in Louisiana when Mrs. Watson bought and used in that State "Toni Home Permanent" a hair-waving product alleged to have contained a highly dangerous latent ingredient put there by its manufacturer. The manufacturer is the Toni Company of Illinois, a subsidiary of the Gillette Safety Razor Company which has its headquarters in Massachusetts.

The particular problem presented with reference to enforcing the Louisiana statute in this case arises because the insurance policy sued on was negotiated and issued in Massachusetts and delivered in Massachusetts and Illinois.[2] This Massachusetts-negotiated contract con-

---

[1] Title 22, La. Rev. Stat., 1950.

[2] The insurance policy was issued to "The Toni Company, a Division of the Gillette Safety Razor Company . . . ." Gillette is a Delaware Corporation with headquarters in Boston where the contract was negotiated with the Boston office of Employers. The Toni Company manufactures the hair-waving product in Chicago, Illinois.

tains a clause, recognized as binding and enforceable under Massachusetts and Illinois law, which prohibits direct actions against the insurance company until *after* final determination of the Toni Company's obligation to pay personal injury damages either by judgment or agreement.[3] Contrary to this contractual "no action" clause, the challenged statutory provisions permit injured persons to sue an insurance company *before* such final determination. As to injuries occurring in Louisiana, one provision of the State's direct action statute makes it applicable, even though, as here, an insurance contract is made in another state and contains a clause forbidding such direct actions.[4] Another Louisiana statutory pro-

---

[3] "12. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

[4] "The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action,

vision, with which Employers long ago complied, compels foreign insurance companies to consent to such direct suits in order to get a certificate to do business in the State.[5] The basic issue raised by the attack on both these provisions is whether the Federal Constitution forbids Louisiana to apply its own law and compels it to apply the law of Massachusetts or Illinois.

After the case was removed to the United States District Court because of diversity Employers moved to dismiss, contending that the two Louisiana statutory provisions contravened the Equal Protection, Contract, Due Process and Full Faith and Credit Clauses of the Federal Constitution. With emphasis on the due process contention, the District Court dismissed the case, holding both statutory provisions unconstitutional as to policies written and delivered outside the State of Louisiana. 107

---

provided the accident or injury occurred within the State of Louisiana. . . . It is the intent of this section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." La. Rev. Stat., 1950, § 22:655, as amended by Act 541 of the Louisiana Legislature of 1950. As to the scope of this provision according to Louisiana courts, see *Rome* v. *London & Lancashire Indemnity Co. of America*, La. App., 169 So. 132.

[5] "No certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer shall consent to being sued by the injured person or his or her heirs in a direct action as provided in Section 655 of this title, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident or injury occurred within the State of Louisiana. The said foreign or alien insurer shall deliver to the Secretary of State as a condition precedent to the issuance of such authority, an instrument evidencing such consent." La. Rev. Stat., 1950, § 22:983, as amended by Act 542 of the Louisiana Legislature of 1950.

F. Supp. 494.[6] The Court of Appeals agreed with the District Court and affirmed the dismissal. 202 F. 2d 407. Provisions of Louisiana's statutes having been held invalid as repugnant to the Federal Constitution, the case is properly here on appeal.[7]

The denial of equal protection and impairment of contract contentions are wholly void of merit. The State's direct action provisions fall with equal force upon all liability insurance companies, foreign and domestic. Employers points to no other provisions of the Louisiana law or to facts of any nature which give the slightest support to any charge of discriminatory application of the direct action statute. And since the direct action provisions became effective before this insurance contract was made, there is a similar lack of substantiality in the suggestion that Louisiana has violated Art. I, § 10, of the United States Constitution which forbids states to impair the obligation of contracts. *Munday* v. *Wisconsin Trust Co.,* 252 U. S. 499, 503.

Had the policy sued on been issued in Louisiana there would be no arguable due process question. See *Merchants Mutual Auto. Liability Ins. Co.* v. *Smart,* 267 U. S. 126, 129–130. But because the policy was bought, issued and delivered outside of Louisiana, Employers invokes the due process principle that a state is without power to exercise "extraterritorial jurisdiction," that is, to regulate and control activities wholly beyond its boundaries. Such a principle was recognized and applied in *Home Ins. Co.* v. *Dick,* 281 U. S. 397, a case strongly relied on by

[6] The District Court relied in part on its prior opinions in *Mayo* v. *Zurich General Accident & Liability Ins. Co.,* 106 F. Supp. 579; *Bayard* v. *Traders & General Ins. Co.,* 99 F. Supp. 343; *Bish* v. *Employers' Liability Assurance Corp.,* 102 F. Supp. 343.

[7] 28 U. S. C. § 1254 (2). In addition to noting probable jurisdiction of this cause, we granted certiorari. 347 U. S. 958. Since the case is properly here on appeal, the certiorari is dismissed.

Employers. There Texas was denied power to alter the terms of an insurance contract made in Mexico between persons then in that country, covering a vessel only while in Mexican waters, and containing a provision that the contract was to be governed. by the laws of Mexico. Thus, the subject matter of the contract related in no manner to anything that had been done or was to be done in Texas. For this reason, Texas was denied power to alter the obligations of the Mexican contract. But this Court carefully pointed out that its decision might have been different had activities relating to the contract taken place in Texas upon which the State could properly lay hold as a basis for regulation. *Home Ins. Co.* v. *Dick, supra,* at 408 n. 5. The extraterritorial due process doctrine was again applied in *Hartford Accident & Indemnity Co.* v. *Delta & Pine Land Co.,* 292 U. S. 143. That case denied the power of Mississippi to alter terms of an insurance contract made in Tennessee. Mississippi activities in connection with the policy were found to be so "slight" and so "casual" that Mississippi could not apply its own law in such way as to enlarge the obligations of the Tennessee contract. Again, however, the Court carefully noted that there might be future cases in which the terms of out-of-state contracts would be so repugnant to the vital interests of the forum state as to justify nonenforcement. *Hartford Accident & Indemnity Co.* v. *Delta & Pine Land Co., supra,* at 150. See also *Griffin* v. *McCoach,* 313 U. S. 498, and cases there cited.

Some contracts made locally, affecting nothing but local affairs, may well justify a denial to other states of power to alter those contracts. But, as this case illustrates, a vast part of the business affairs of this Nation does not present such simple local situations. Although this insurance contract was issued in Massachusetts, it was to protect Gillette and its Illinois subsidiary against damages on account of personal injuries that might be

suffered by users of Toni Home Permanents anywhere in the United States, its territories, or in Canada. As a consequence of the modern practice of conducting widespread business activities throughout the entire United States, this Court has in a series of cases held that more states than one may seize hold of local activities which are part of multistate transactions and may regulate to protect interests of its own people, even though other phases of the same transactions might justify regulatory legislation in other states. See, e. g., *Osborn* v. *Ozlin,* 310 U. S. 53; *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313; *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532.

Louisiana's direct action statute is not a mere intermeddling in affairs beyond her boundaries which are no concern of hers. Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives, or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment of such damages. Moreover, Louisiana courts in most instances provide the most convenient forum for trial of these cases. But modern transportation and business methods have made it more difficult to serve process on wrongdoers who live or do business in other states. In this case efforts to serve the Gillette Company were answered by a motion to dismiss on the ground that Gillette had no Louisiana agent on whom process could be served. If this motion is granted, Mrs. Watson, but for the direct action law, could not get her case tried without going to Massachusetts or Illinois although she lives in Louisiana and her claim is for injuries from a product

bought and used there. What has been said is enough to show Louisiana's legitimate interest in safeguarding the rights of persons injured there. In view of that interest, the direct action provisions here challenged do not violate due process.

What we have said above goes far toward answering the Full Faith and Credit Clause contention. That clause does not automatically compel a state to subordinate its own contract laws to the laws of another state in which a contract happens to have been formally executed. Where, as here, a contract affects the people of several states, each may have interests that leave it free to enforce its own contract policies. *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532, 544–550. See *Griffin* v. *McCoach,* 313 U. S. 498, 506–507. We have already pointed to the vital interests of Louisiana in liability insurance that covers injuries to people in that State. Of course Massachusetts also has some interest in the policy sued on in this case. The insurance contract was formally executed in that State and Gillette has an office there. But plainly these interests cannot outweigh the interest of Louisiana in taking care of those injured in Louisiana. Since this is true, the Full Faith and Credit Clause does not compel Louisiana to subordinate its direct action provisions to Massachusetts contract rules. *Pacific Employers Ins. Co.* v. *Commission,* 306 U. S. 493, 503. But cf. *John Hancock Mut. Life Ins. Co.* v. *Yates,* 299 U. S. 178; *Hughes* v. *Fetter,* 341 U. S. 609.

What we have already said disposes of the contention that Louisiana's law compelling foreign insurance companies to consent to direct actions is unconstitutional. That contention is that the Due Process Clause of the Fourteenth Amendment forbids a state to compel a foreign corporation to surrender constitutional rights as a condition of being permitted to do business in the state. See *Terral* v. *Burke Construction Co.,* 257 U. S. 529. That

principle is inapplicable to this case because, as we have just decided, Louisiana has a constitutional right to subject foreign liability insurance companies to the direct action provisions of its laws whether they consent or not.

*Reversed.*

Mr. Justice Frankfurter, concurring.

While I agree with the Court's result, I find the course of reasoning by which it is reached not without serious obstacles. Since the difficulties involve constitutional issues, decision upon them should be avoided if a less doubtful ground is available. In my opinion there is a basis which readily invites today's decision. Whether Louisiana may rewrite a contract, whose obligations are determined by Massachusetts or Illinois, by deleting a substantial feature of that contract and thereby enlarging the obligation of the insurance company, surely raises a serious question affecting the constitutional relationships of the States one to another. Contrariwise, whether Louisiana, free as it was to exclude the insurance company from coming into the State to do business, was empowered to condition the company's entry by an undertaking to observe a public policy binding on all local insurance companies and strictly related to the protection of serious interests of its own citizens, seems to me a question easier of solution. Accordingly I would rest the decision on this ground.

This controversy arises out of a contract made between Employers' Liability Assurance Corp., a British corporation, and the Toni Company, a division of the Gillette Safety Razor Co., a Delaware corporation with principal offices in Boston, Massachusetts. The contract contained this provision:

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have

fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

It was issued and delivered in Massachusetts to Gillette and a copy delivered in Illinois to Toni. Happily, it is not necessary to determine whether the obligations flowing from this contract are determined exclusively by the law of Massachusetts or by the law of Illinois. Concededly, both States recognize the right of an insurance company to safeguard its treasury by making its indirect liability to a third person contingent on a judgment against the insured or compromise settlement participated in by the insurer. Howsoever the fact may be phrased or explained away, to allow suits by a third-party claimant directly against the insurance company prior to a judgment against the insured is to subject the insurance company to an obligation which it had not undertaken and which indeed it had expressly refused to assume. In sanctioning the protection of insurance funds afforded by the "no-action" clause, Massachusetts and Illinois have expressed state policy of the same constitutional authority as Louisiana asserted in its legislation allowing direct actions. Massachusetts is deeply concerned with the fiscal well-being of insurance companies whose activities center in that State; this is of considerable importance to its citizens. In addition, both Massachusetts and Illinois share concern for the interest of the insured in the scope and nature of the obligations which bind as well as protect him. The premiums payable by the insured under this policy varied directly with the losses paid by the insurer and to that extent the insured had a stake in the "no-action" clause. To treat that clause as though it were a redundant or an insubstantial part of the

agreement is to flout familiar experience of the readiness of juries to amerce insurance companies.[1]

To resolve these conflicting policies solely on the basis of the public policy of Louisiana is to assume that there is only one principle involved in a problem when in fact there are conflicting principles of equal relevance. This Court has not heretofore disregarded the interests of States in the position of Massachusetts and Illinois by exclusive regard for the policy of a State in the position of Louisiana when regard for its interest necessarily tangles with the interests of sister States. To be sure, a State may refuse to give affirmative help in enforcing a contract valid in a sister State where the obligation was incurred, but against its own policy. At least it may do so insofar as the Full Faith and Credit Clause is no barrier. But to deny judicial enforcement of a contract through its courts when such contract sufficiently offends local policy is a very different thing from rewriting a contract and enforcing it in a manner contrary to the undertaking of the makers.

That Louisiana's attempt to change the terms of the contract of insurance in this case presents a serious question, apart from the power of Louisiana to exclude a foreign insurance company or admit it on condition, is emphatically shown by *Hartford Accident & Indemnity Co.* v. *Delta & Pine Land Co.,* 292 U. S. 143. In that case an action was brought in Mississippi on a fidelity bond insuring against employee defalcations "in any position anywhere." The bond had been issued while the executive offices of the insured were temporarily in Tennessee,

---

[1] Additional protections to both insurer and insured are swept aside under the Louisiana direct action statute. The interest of the insured in the outcome of the litigation decreases, with concomitant reduction in the likelihood of his vigorous cooperation in the insurer's defense. The burden of this same obligation of cooperation becomes increasingly oppressive to a conscientious insured as service on far-flung agents of the insurer leads to remote judicial proceedings.

and was issued and delivered in that State. After the insured moved its main offices to Mississippi, the State of its incorporation, suit was brought there for its treasurer's thieving in Mississippi. The policy contained a provision that a claim under the contract must be made within 15 months after the termination of suretyship for the defaulting employee. The claim was not made within that period, but the Mississippi Supreme Court held that this condition was not enforceable because contrary to a Mississippi statute. This Court reversed the Mississippi court, holding that the Mississippi statute could not disregard the limiting provision of the contract. The principle was laid down that a State may not "in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen." 292 U. S., at 149. Joining in this unanimous decision were two members, Mr. Chief Justice Hughes and Mr. Justice Brandeis, who probably had more specialized knowledge to make them aware that "Government has always had a special relation to insurance," *Osborn* v. *Ozlin,* 310 U. S. 53, 65, than any other Justices ever to sit on this Court.

In the *Hartford Indemnity* case, as here, the policy covered transitory risks, without a defined situs, and the State of the forum had a foreseeable concern with the protection of assets within its jurisdiction at the time the policy was issued, for the policy issued listed 21 employees who were then working in Mississippi. Nevertheless, Mississippi, the State of the forum, was not allowed to enlarge the obligations of a contract elsewhere validly consummated.

Our more recent cases have not made inroad on the governing consideration in the *Hartford Indemnity* case, that the State which fixes the terms of insurance contracts has interests to be protected by the Constitution no less important than has a State which seeks to excise

provisions of such a contract. In both the *Osborn* case, *supra,* and *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313, the Court was concerned merely with the validity of legislation of a regulatory nature. In neither was the Court faced with the problem of applying to an existing valid contract made outside the State local law modifying such contract. Realization that the Louisiana statute, in the context of this case, raises the delicate problem of balancing interests—that refractory aspect of due process—admonishes its avoidance when an easier solution lies at hand.

These, then, are the formidable constitutional hurdles that would have to be cleared were this an action against an insurance company which, somehow or other, was duly served in Louisiana but which had not exercised the privilege of doing business there subject to the condition of amenability to Louisiana direct action statutes. I have no doubt, however, that Louisiana can exact from Employers', as it did, valid consent to direct action in the case of injuries inflicted in Louisiana upon its citizens by Employers' policyholders. It can do so as part of the fair bargain by which it gave hospitality to Employers' for doing business in Louisiana.

After the grain is winnowed from the chaff in some hundred opinions dealing with so-called "unconstitutional conditions," insofar as they relate to the power of a State to exclude a foreign corporation or condition its entry, the residuum is clear. In an early leading case the State's authority was asserted in absolute terms:

> "Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may

restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." *Paul* v. *Virginia,* 8 Wall. 168, 181.[2]

After a while, some obvious, strictly defined qualifications were made:

"The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits . . . or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the federal government, is not to be restricted by state authority." *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania,* 125 U. S. 181, 190.

After considerable further judicial experience, the matter was thus summarized in our own day by Mr. Justice Holmes:

". . . we assume in favor of the defendants that the State has the power and constitutional right arbitrarily to exclude the plaintiff without other reason than that such is its will. But it has been held a great many times that the most absolute seeming

---

[2] An earlier case expressed, in a jumble of loose generalizations, the assumption that there were some inherent restrictions on a State's power to deal with foreign corporations. *Lafayette Insurance Co.* v. *French,* 18 How. 404, 407. Phrases like "natural justice" or "natural reason" or "the principles of the social compact" were in fashion at that time for stating intrinsic limitations on the exercise of all political power. More recently, the power of this Court to strike down legislation has been more acutely analyzed and less loosely expressed. Rhetorical generalizations have not been deemed sufficient justification for invalidating legislation.

rights are qualified, and in some circumstances become wrong. One of the most frequently recurring instances is when the so-called right is used as part of a scheme to accomplish a forbidden result. *Frick* v. *Pennsylvania,* 268 U. S. 473. *American Bank & Trust Co.* v. *Federal Reserve Bank of Atlanta,* 256 U. S. 350, 358. *Badders* v. *United States,* 240 U. S. 391, 394. *United States* v. *Reading Co.,* 226 U. S. 324, 357. Thus the right to exclude a foreign corporation cannot be used to prevent it from resorting to a federal court, *Terral* v. *Burke Construction Co.,* 257 U. S. 529; or to tax it upon property that by established principles the State has no power to tax, *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and other cases in the same volume and later that have followed it; or to interfere with interstate commerce, *Sioux Remedy Co.* v. *Cope,* 235 U. S. 107 [197], 203; *Looney* v. *Crane Co.,* 245 U. S. 178, 188. *Western Union Telegraph Co.* v. *Foster,* 247 U. S. 105, 114. A State cannot regulate the conduct of a foreign railroad corporation in another jurisdiction, even though the Company has tracks and does business in the State making the attempt. *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 153 U. S. 628, 646." *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426, 434–435.

This was a particularization of his earlier generalization in *Denver* v. *Denver Union Water Co.,* 246 U. S. 178:

"The ordinance of the City could mean no more than that the Company must accept the City's rates or stop—and as it could be stopped by the City out and out, the general principle is that it could be stopped unless a certain price should be paid. . . . It is true that this principle has not been applied in cases where the condition tended to bring about a state of things that there was a predominant public interest

to prevent, but I see no ground for the application here of anything to be deduced from *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56, or *Motion Picture Patents Co.* v. *Universal Film Manufacturing Co.,* 243 U. S. 502." *Id.,* at 197.

The upshot of our decisions was most recently thus summarized by Mr. Justice Roberts for the Court:

"It has repeatedly been said that qualification of a foreign corporation in accordance with the statutes permitting its entry into the State constitutes an assent on its part to all the reasonable conditions imposed. *Lafayette Insurance Co.* v. *French, supra* [18 How. 404], 408; *St. Clair* v. *Cox, supra* [106 U. S. 350], 356; *Connecticut Mutual Life Insurance Co.* v. *Spratley,* 172 U. S. 602, 614; *Old Wayne Mut. Life Assn.* v. *McDonough,* 204 U. S. 8, 22; *Commercial Mutual Accident Co.* v. *Davis,* 213 U. S. 245, 254. It is true that the corporation's entry may not be conditioned upon surrender of constitutional rights, as was attempted in the cases on which the appellant relies. *Terral* v. *Burke Construction Co.,* 257 U. S. 529; *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426; *Frost Trucking Co.* v. *Railroad Commission,* 271 U. S. 583; *Hanover Fire Insurance Co.* v. *Harding,* 272 U. S. 494. And for this reason a State may not exact arbitrary and unreasonable terms respecting suits against foreign corporations as the price of admission, *Power Mfg. Co.* v. *Saunders,* 274 U. S. 490. . . .

"The power of the State altogether to exclude the corporation, and the consequent ability to condition its entrance into the State, distinguishes this case from those involving substituted service upon individuals . . . ." *Washington* v. *Superior Court,* 289 U. S. 361, 364–365.

The standard of reasonableness, as expressed in the *Washington* case, imposed on the power of a State to admit a foreign corporation on conditions, embraces all prior instances of denial of state power. It gives a rational basis for the holdings that a State may not restrict federal judicial power or burdensomely regulate or tax interstate commerce, or, without justification of ample interests of its own, project its powers into the domain of another State.

What Louisiana has done here falls outside any of the specific instances or the guiding principles recognized by this Court from time to time as limitations upon what still remains the practically arbitrary power of a State in dealing with the desire of a foreign corporation, not privileged to do so by federal authority, to do business within its bounds.[3] Here we have no claim of interference with interstate commerce or with the operations of the Federal Government. There is no discrimination between foreign and domestic insurance companies. And there is no denial of due process because the Louisiana condition of admission meets the test of reasonableness, a standard to be applied in diverse contexts in the light of all relevant factors, including here the recognized power to exclude a foreign corporation. It meets the test of reasonableness because the conditions imposed are fairly related to the interests which Louisiana may appropriately protect in surrendering its right to exclude a foreign corporation. The interests of Massachusetts or Illinois do not so ob-

---

[3] Whatever the survival value of *Frost & Frost Trucking Co.* v. *Railroad Comm'n*, 271 U. S. 583, cf. *Stephenson* v. *Binford*, 287 U. S. 251, it is significant that, while it was there held that to subject a private carrier to a common carrier's liabilities as a condition of permitting a local trucking company to use the highways was violative of due process, the opinion did not even advert to the earlier case of *Pierce Oil Corp.* v. *Phoenix Rfg. Co.*, 259 U. S. 125, in which the imposition of a common carrier's liabilities on a private oil carrier was upheld as a condition on the entry of the foreign corporation.

viously subordinate those of Louisiana that the latter must constitutionally yield to the former.

Surely it was reasonable for Louisiana to adopt the method it did of meeting some of the difficulties in obtaining jurisdiction over out-of-state tortfeasors, typified in the present case by the dispute over the efficacy of attempted service upon Gillette, the insured. Even where that specific problem is not present, the State may justifiably have felt concern over the delays in satisfaction of judgments for injuries sustained in Louisiana by Louisiana citizens that are inherent under the traditional system which requires a separate action by the victim of an insured tortfeasor to reach the latter's insurance should he default in payment of a judgment against him. It cannot be said that Louisiana was extorting an unfair or unreasonable advantage for its citizens as the price of its permission to Employers' to tap the Louisiana insurance market.[4] Nor can it be said that in thus protecting its own serious interests it was selfishly or ruthlessly seeking to inject itself into matters that were the sole or predominant concern of sister States.[5]

---

[4] Thus it has been held that a State may, as a condition of admission, require compliance with local antitrust policy, *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, even as to the operations of foreign corporations in another State, *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322. It may require the assumption by a private carrier of some of the duties of a common carrier, *Pierce Oil Corp.* v. *Phoenix Rfg. Co.,* 259 U. S. 125; and it may impose methods of substituted service on foreign corporations which, if applied to individuals, would be violative of due process, *Washington* v. *Superior Court,* 289 U. S. 361.

[5] Such cases as *St. Louis Cotton Compress Co.* v. *Arkansas,* 260 U. S. 346, and *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426, invalidating state statutes which attempted to prevent or penalize acts outside of the forum State are not pertinent. In these cases a State was seeking to assert its power over the happenings in another State. And so, likewise, a State may not tax property within the taxing jurisdiction of another State.