Burke, J. (dissenting).
In my dissent in Seider v. Roth (17 N Y 2d 111) I indicated why in my view there was not in that case even an attachable debt which could serve as a basis for the exercise of jurisdiction under our practice statutes. The *317 constitutional arguments raised in this case, as well as in Victor v. Lyon Assoc, decided herewith (21 N Y 2d 695), were not raised in Seider and thus it was not necessary to reach these so difficult issues in that case. In considering now the constitutionality of our claim of jurisdiction to affect the rights and interests of parties involved in Seider-type controversies, I am moved to confess agreement with the comment of Professor Siegel: “ Whatever problems one can conjure up in connection with [Seider] prove incomplete; more appear, and each partakes of the same theoretical and practical difficulties. These problems often prove so bizzare that they become difficult even to verbalize.” (Professor D. D. Siegel, Supplementary Commentary to CPLR 5201; McKinney’s Cons. Laws of N. Y., Book 7B [1967 Cum. Sup.], p. 16.) Seider cannot be fitted into the traditional modes of analysis ordinarily useful in considering jurisdiction, except with great difficulty, and even applying the more recently devised (progressive, if you will) approach to jurisdiction wherein the distinction between in rem and in personam jurisdiction is de-emphasized (see, e.g., Atkinson v. Superior Ct., 49 Cal. 2d 338, apps. dsmd. and cert. den. sub nom. Columbia Broadcasting System v. Atkinson, 357 U. S. 569), Seider presents substantial problems. I am, however, constrained to conclude that under none of these approaches can Seider be upheld as constitutional.[1]
Considered as but the creation of a “ direct action ” remedy, arrived at by way of judicial decision, rather than through the more normal fashion of legislation, and, therefore, based, in reality, if not in form, solely upon in personam jurisdiction over the insurer rather than on the existence of “ property ” belonging to the ostensible defendant-insured within this State, Seider is of doubtful constitutionality. Granted jurisdiction over the insurer, this State’s interference with or alteration of the rights and obligations of parties to a contract of insurance issued out of State violates due process, it seems clear under Watson v.
*318 Employers Liab. Assur. Corp. (348 U. S. 66), unless we can show a sufficient State interest in the insurance relationship or in the underlying accident to justify such interference. (This point is discussed with particular acuity in an excellent student comment on Seider, “ Garnishment of Intangibles,” 67 Col. L. Rev. 550, 558-560.) Mere presence of the insurer in this State, which is all that Seider appears to require, based as it is on a highly formalistic in rem attachment approach, would not seem sufficient to establish such an interest,[2] and even if Seider is to be read as requiring that the plaintiff must have been a New York resident at the time of the accident,[3] these would not seem sufficient additional circumstances to warrant interference with the rights and obligations of the parties to the out-of-State contract. In Watson the Supreme Court was at pains to stress the significance of the occurrence of the injury in the forum State. The court remarked: “ Louisiana’s direct action statute is not a mere intermeddling in affairs beyond her boundaries which are no concern of hers. Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. * * * Moreover, Louisiana courts in most instances provide the most convenient forum for trial of these cases. * * * If this motion [to dismiss] is granted, Mrs. Watson, but for the direct action law, could not get her case tried without going to Massachusetts or Illinois although she lives in Louisiana and her claim is for injuries from a product bought and used there ” (supra, pp. 72-73; emphasis added).
Seider may be upheld only if we may constitutionally provide for our residents (and for all who would later come into our courts, Seider would seem to allow) an umbrella of protection, *319 including venue at the plaintiff’s convenience and without any regard for the convenience of defendants or the availability of witnesses, unlimited in its extent,[4] only if we may say to such persons that no matter which State or nation they travel to they carry with them the right to bring back to the New York courts for adjudication controversies otherwise completely local in character. I do not read Watson as allowing this and, in fact, Home Ins. Co. v. Dick (281 U. S. 397) may be read as barring such an extension of the regulatory power of this State beyond its territorial limits. In Dick, the Supreme Court, in language particularly apt for the S eider situation, pointed out that residence was not enough to create such jurisdiction. It there remarked: “ The fact that Dick’s permanent residence was in Texas is without significance. At all times here material, he was physically present and acting in Mexico ” (supra, p. 408; emphasis added; cf. Clay v. Sun Ins. Office, Ltd., 377 U. S. 179, 182). Likewise, at all times that I would consider material, to wit, when the accidents occurred, Seider and the plaintiffs in the cases now before this court, Simpson and Victor, were “ physically present and acting ” outside this State.
Watson is in many ways analogous to developments that have taken place in the extension of State court jurisdiction under the various State “ long-arm ” statutes. In fact, many would urge that on the facts of that case Louisiana might have constitutionally exercised in personam jurisdiction over the out-of-State manufacturer (compare Gray v. American Radiator & Std. Sanitary Corp., 22 Ill. 2d 432; compare, also, Feathers v. McLucas, 15 N Y 2d 443, 458-464, with the subsequent amendment to CPLR 302 added by L. 1966, ch. 590). Under the facts of Seider and the cases now before us I know of no authority that would .support in personam jurisdiction in the courts of this State over the out-of-State defendant-insured.
The very same considerations lead me to doubt that jurisdiction in rem based upon the obligations of an insurer under a contract of insurance can constitutionally be exercised by this State in the Seider situation. Assuming even the continued *320 utility and constitutional viability of the rule of Harris v. Balk (198 U. S. 215) that a debt has its situs and may be attached in any State in which the debtor is subject to in personam jurisdiction, it is clear that the obligations of an insurer under a liability policy to defend and indemnify the insured are not “ ordinary debts,” such as the Supreme Court was considering in Harris v. Balk (see 198 U. S., p. 223). They are contingent contractual obligations, requiring the commencement of suit against the insured (and the obtaining of a judgment with respect to the obligation to indemnify) before the insured has any claim against the ostensible ‘ ‘ debtor ’ ’ insurer. The defendant-insured has no property within the State, which is the necessary predicate for an exercise of in rem jurisdiction (Hanson v. Denckla, 357 U. S. 235, 246), unless New York may properly (i.e., constitutionally) transform these contingent obligations into matured debts owing to the insured. This it cannot do absent a sufficient State interest in the insurance relationship or the accident. In my dissent in Seider I referred to the result obtained there as jurisdiction acquired through a ‘ ‘ bootstrap operation” (17 N Y 2d 111, 115, quoting Professor Siegel). This sort of bootstrap operation, I respectfully submit, is constitutionally impermissible under the circumstances presented in Seider and the cases now before this court.
Going further, it may well be argued that, even if these intangible interests could be considered fully matured and owing to the insured even before the commencement of an action in personam, strong arguments exist for the proposition that due process bars assigning such intangibles a situs, for attachment purposes, in New York. As mentioned above, Harris v. Balk (supra) speaks only of “ ordinary debts ” and Hanson v. Denckla (supra) may fairly be read as leaving open the question of situs for jurisdictional purposes of less simple intangibles, if not even as seriously undercutting Harris v. Balk altogether. The court in Hanson v. Denckla in discussing in rem jurisdiction pointed out that, while tangible property posed no problem for application of the rule that the property had to be within the territorial jurisdiction of the forum State for an exercise of such jurisdiction to be proper, the situs of intangibles posed quite a different problem. (See 357 U. S. 235, 246-247, supra.) The court expressly declined to *321 decide whether the type of jurisdiction there dealt with could be exercised by more than one State (which it was at liberty to do as the parties apparently assumed the trust assets were located exclusively in Delaware). (Ibid.) The Supreme Court is, it seems clear, peculiarly aware of developments in this area of the law (see Texas v. New Jersey, 379 U. S. 674, 678) and it might well be prepared to accept the view of the authors of a recently proposed revision of the Restatement of Conflicts that State courts ought not to exercise jurisdiction over ‘ ‘ interests in an intangible thing which is not embodied in, a document ” unless “ the relationship of the state to the thing and to the parties involved makes the exercise of such jurisdiction reasonable.” (See Proposed Official Draft, Restatement, Conflict of Laws, 2d, Pt. I, May 2, 1967, § 65.) This would bring the test for in rem jurisdiction over intangibles having a possible situs in a number of States quite close to that obtaining for in personam jurisdiction. It might even be suggested that such property ought to be assigned a situs in a particular jurisdiction for in rem jurisdiction purposes only where the jurisdiction has some “ minimum connection ” with the property and ‘ ‘ the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice ’ ” (International Shoe Co. v. Washington, 326 U. S. 310, 316; McGee v. International Life Ins. Co., 355 U. S. 220, 222; cf. Atkinson v. Superior Ct., supra.) The assigning of situs to intangibles is, as we all know, but a legal fiction (see Hanson v. Denckla, supra, p. 247; see, also, Severnoe Securities Corp. v. London & Lancashire Ins. Co., 255 N. Y. 120, 123; Bankers Trust Co. v. Equitable Life Assur. Soc., 19 N Y 2d 552, 556) and while justice or convenience may on occasion require such an assignment of situs to intangibles, considerations of the purpose for which such an assignment of situs is necessary and fairness to those claiming an interest in the subject property ought to govern the selection process. (Cf. Bankers Trust Co. v. Equitable Life Assur. Soc., supra; see, also, Texas v. New Jersey, supra.)
As the foregoing analysis makes clear, Matter of Riggle (11 N Y 2d 73) in no way required the result reached in Seider. In Biggie the plaintiff had, in fact, secured in personam jurisdiction over Riggle before his death. All that was sought to be
*322 achieved there was a means of continuing the action against his estate. In terms of current jurisdictional notions this result was perfectly fair and proper. (Of. Rosenfeld v. Hotel Corp. of America, 20 N Y 2d 25.) What was done in Biggie should not, simply because of the form our action there took, be held to dictate the result reached in Seider. The circumstances of the two cases are entirely different.
I would reverse the order of the Appellate Division in this case, as well as in Victor v. Lyon Assoc., and remand the cases to the Supreme Court with directions that the motions to vacate these attachments be granted.
Opinion by Chief Judge Fuld. All concur, Judge Keating in an opinion and Judge Breitel in a separate opinion in which Judge Bergan concurs, except Judge Burke who dissents and votes to reverse in an opinion in which Judge Scileppi concurs.
Order affirmed, etc. (Reargument denied, see 21 N Y 2d 990.)

. It ought to be noted that under New York Life Ins. Co. v. Dunlevy (241 U. S. 518), an action at least initially in rem in character, as it was commenced by means of a garnishment of the insurer’s obligation to pay the value of the policy, Seider might well be held unconstitutional. (See Siegel, op. cit., pp. 19-20.) I must be frank, however, to admit my uncertainty as to whether the result obtained there ought to control here. Developments in the area of jurisdiction have come a long way since 1916 when Dunlevy was decided.

. Illustrative of the type of case Seider would appear to invite into our courts is the Vaage ease (see Nationwide Ins. Co. v. Vaage, 265 F. Supp. 556 [S. D., N. Y., 1967]). Vaage, a citizen and resident of Norway, has commenced, by means of a Seider-type attachment, an action in New York based upon an automobile accident in which he was involved in North Carolina. Defendant is a North Carolina resident and the liability policy was issued there. What purpose allowing suit to be brought here, other than possibly increasing Vaage’s hoped for damage award, is beyond me.

. This might pose a problem under the Federal Constitution if Seider’s in rem basis were carried to its logical extreme. See Harris v. Balk (198 U. S. 215, 223-224).

. For example, in Victor v. Lyon Assoc. (21 N Y 2d 695) plaintiff was injured in Danang, South Vietnam. Defendant is a Maryland corporation doing business in the Far East and the policy was issued in Okinawa. Coverage was limited to certain areas in the Far East.