706 F.2d 541
 8 Collier Bankr.Cas.2d 1119, 9 Collier
Bankr.Cas.2d 725,
10 Bankr.Ct.Dec. 1272, Bankr. L. Rep. P 69,278
 Ned WEDGEWORTH, Jr., et al., Plaintiffs-Appellants,
v.
FIBREBOARD CORPORATION, et al., Defendants-Appellees.
Pearl FONTENOT, Plaintiff-Appellee,
v.
FIBREBOARD CORPORATION, et al., Defendants-Appellants.
Ernest DAVIS, Sr., Plaintiff-Petitioner,
v.
JOHNS-MANVILLE PRODUCTS, et al., Defendants-Respondents.
 Nos. 82-3612, 82-4386, 82-3687.
 United States Court of Appeals,
Fifth Circuit.
 May 24, 1983.
Opinion on Denial of Rehearing and Rehearing En Banc Sept. 12, 1983.
 
 Frank X. Neuner, Jr. and Kathleen M. Overcash, Lafayette, La., for keene corp.
 Felix R. Weill, Baton Rouge, La., for Nicolet, Inc.
 James B. Irwin, John P. Hammond, New Orleans, La., for Raybestos-Manhattan.
 John A. Bivins, Lafayette, La., for Standard Asbestos.
 Donald Ensenat and David Bienvenu, New Orleans, La., for Am. Petrofina.
 Horace C. Lane, Baton Rouge, La., and James S. Thompson and Stephen Bullock, New Orleans, La., for Pittsburg-Corning.
 Robert N. Ryan and Wm. L. Brockman, New Orleans, La., John G. Tucker, Beaumont, Tex., for GAF Corp.
 Thomas M. Bergstedt, Lake Charles, La., for Armstrong Cork and Armstrong World.
 David A. Hurlburt, Lafayette, La., for Celotex Corp.
 George R. Covert and Charles H. Braud, Jr., Baton Rouge, La., for Wedgeworth, et al.
 Stephen W. Hanks, Houston, Tex., for Fontenot.
 George A. Weller, Beaumont, Tex., for Fibreboard.
 Edward O. Taulbee, IV, Lafayette, La., for Combustion Engineering.
 M.H. Gertler, New Orleans, La., for Davis.
 W.L. Brockman, P.A. Bienvenu and Robert N. Ryan, New Orleans, La., for Johns-Manville.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Appeals from the United States District Court for the Western District of Louisiana.
 On Petition for Writ of Certiorari to the United States District Court for the Eastern District of Louisiana.
 Before GARZA, POLITZ and JOHNSON, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 These consolidated appeals concern the effect of stays granted to Johns-Manville Corporation (Johns-Manville) and UNR Industries, Inc. (Unarco), pending disposition of their proceedings in bankruptcy, upon their co-defendants in suits alleging liability for asbestosis caused by defendants' products. We hold that: (1) the automatic stay of all litigation against Johns-Manville and Unarco does not mandate that claims against their co-defendants be likewise stayed, (2) the co-defendants are not entitled to a discretionary stay pending resolution of the bankruptcy claims, and (3) the district court in the Wedgeworth case improperly denied leave to amend to allow direct action against the liability insurers of Johns-Manville and Unarco.
 
 Background Facts
 
 2
 The plaintiffs in these three actions, like the plaintiffs in thousands of similar suits filed across the nation, allege that the inhalation of asbestos fibers from defendants' products caused asbestosis, a pneumoconiosis or progressive lung disease. Defendants manufactured asbestos-related products and products containing asbestos fibers. A large number of these suits have been pending for years. Extensive discovery has been accomplished. Some suits have been concluded. A developing tactic has been to use in subsequent trials evidence developed in earlier litigation.
 
 
 3
 Against this ground swell of litigation, threatening to engulf all in its path, on July 29, 1982, Unarco filed an application for reorganization under Chapter 11 of the Bankruptcy Code in the bankruptcy court in the Northern District of Illinois. Less than a month later, on August 26, 1982, Johns-Manville petitioned for a Chapter 11 reorganization in bankruptcy court in the Southern District of New York.[1] All legal proceedings, in whatever jurisdiction and forum, were automatically stayed against Unarco and Johns-Manville in accordance with 11 U.S.C. Sec. 362(a).[2]
 
 
 4
 In the cases before us the co-defendants asked that the pending litigation against them be stayed until the bankruptcy proceedings initiated by Johns-Manville and Unarco are concluded.
 
 
 5
 On September 14, 1982, the district court in Fontenot v. Fibreboard Corp., Nos. 82-4386 and 82-9270 (W.D.La., Hunter, J.), denied the motion of the remaining 14 co-defendants for an indefinite stay.
 
 
 6
 On September 28, 1982, the district court in Wedgeworth v. Fibreboard Corp., Nos. 82-3612 and 82-9295 (M.D.La., Polozola, J.), took the opposite tack, granting a stay of the entire litigation, including the claims against the co-defendants. The court also denied plaintiffs leave to amend to assert a direct cause of action against the liability insurers of Johns-Manville and Unarco.
 
 
 7
 On October 12, 1982, the district court in Davis v. Johns-Manville Products, No. 82-3687 (E.D.La., Arceneaux, J.), granted a stay as to all parties in nearly 200 claims, although Johns-Manville had been released as a party defendant eight months before.
 
 
 8
 Appeals were filed in the first two cases; the third comes before us by writ. The matters were ordered consolidated under our appellate and supervisory jurisdiction. Today we attempt to provide at least a measure of uniformity in an area where little exists. Indeed, one district judge characterized the nationwide situation as one of "unbelievable confusion."
 
 Automatic Stay
 
 9
 Plaintiffs maintain that a stay of proceedings against the co-defendants is not mandated by 11 U.S.C. Sec. 362(a), which merely provides for the automatic stay of any judicial "proceeding against the debtor," Sec. 362(a)(1). Although judicial interpretation is checkered as to the extent of this statutorily required stay, resolution of the question presented requires a walk down a path as yet unblazed by this court. At trail's end we conclude that Sec. 362 does not operate as an automatic stay of claims against the co-defendants of Johns-Manville and Unarco.
 
 
 10
 We begin our inquiry by examining the plain language of the statute. That language clearly focuses on the insolvent party. There are repeated references to the debtor. The stay envisioned is "applicable to all entities," Sec. 362(a), but only in the sense that it stays all entities proceeding against the debtor. To read the "all entities" language as protecting co-debtors would be inconsistent with the specifically defined scope of the stay "against the debtor," Sec. 362(a)(1). Continuing, we note that the remaining clauses of Sec. 362(a) carefully list the kinds of proceedings stayed, in each instance explicitly or implicitly referring to "the debtor."
 
 
 11
 This literal interpretation of Sec. 362(a) is bolstered by language which is notably absent from its provisions. By way of comparison, Chapter 13 specifically authorizes the stay of actions against co-debtors. 11 U.S.C. Sec. 1301(a) ("a creditor may not ... commence or continue any civil action ... [against] any individual that is liable on such debt with the debtor"). No such shield is provided Chapter 11 co-debtors by Sec. 362(a).
 
 
 12
 Further, the legislative history of Sec. 362 supports this distinction between debtors and co-debtors. The automatic stay was intended to protect the debtor's assets and give it a "breathing spell." See S.Rep. No. 989, 95th Cong., 2d Sess., 54-55, reprinted in [1978] U.S.Code Cong. & Admin.News 5787, 5840-41. The provision concomitantly protects creditors by preventing a race for the debtor's assets. See H.R.Rep. No. 595, 95th Cong., 2d Sess., 340, reprinted in [1978] U.S.Code Cong. & Admin.News 5787, 6297. Neither purpose is advanced by application of the stay rule to co-defendants.
 
 
 13
 Finally, the bankruptcy court considering the Johns-Manville reorganization has refused to interpret its stay to include co-defendants, In re Johns-Manville Corp., 26 B.R. 405 (Bkrtcy.S.D.N.Y.1983), as has the bankruptcy court considering Unarco's reorganization, In re UNR Industries, Inc., 23 B.R. 144 (Bkrtcy.N.D.Ill.1982) (citing Royal Truck & Trailer v. Armadora Maritima Salvadoreana, 10 B.R. 488 (D.C.N.D.Ill.1981)). See also Austin v. Unarco Industries, Inc., 705 F.2d 1 (1st Cir.1983); Pitts v. Unarco Industries, Inc., 698 F.2d 313 (7th Cir.1983); Kindle v. Fibreboard Corp., No. TY-79-35-CA (E.D.Tex. Aug. 12, 1982), writ of mandamus denied sub nom. In re Raybestos-Manhattan, Inc., No. 82-2339 (5th Cir. Aug. 20, 1982); In re Related Asbestos Cases, 23 B.R. 523 (D.C.N.D.Cal.1982). We join those courts concluding that the protections of Sec. 362 neither apply to co-defendants nor preclude severance.[3]
 
 Discretionary Stay
 
 14
 In two of the cases at bar the district court granted stays relying on the general discretionary power of district courts to stay proceedings in the interest of justice and in control of their dockets. Although we recognize the court's broad discretion in this area, such control is not unbounded. Proper use of this authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936).
 
 
 15
 The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding:
 
 
 16
 [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.
 
 
 17
 Id. at 255, 57 S.Ct. at 166. Further, before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the "other case," in light of the principle that "stay orders will be reversed when they are found to be immoderate or of an indefinite duration." McKnight v. Blanchard, 667 F.2d 477, 479 (5th Cir.1982). Accord, CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284 (11th Cir.1982) (finding abuse of discretion in indefinite stay based on pending Iranian claims). Thus, a stay must be "so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." Landis, 299 U.S. at 257, 57 S.Ct. at 167.
 
 
 18
 We are persuaded that the requisite balancing of the competing interests involved in these cases weighs in favor of allowing the remaining actions to proceed. The realities of the hardship of a stay on the plaintiffs, many of whom allege that they are dying from asbestosis, is substantial and, in some instances, permanent. The grim reaper has called while judgment waits. Just as obviously, the bankruptcy proceedings are not likely to conclude in the immediate future. A stay hinged on completion of those proceedings is manifestly "indefinite."
 
 
 19
 We find no "clear case of hardship or inequity [on defendants] in being required to go forward" sufficient to offset these considerations. One district judge observed that the various defendants had consistently relied on Johns-Manville to take the lead in the defense. This is a consideration but it is hardly compelling. The plaintiffs very likely viewed Johns-Manville as the primary opponent and must now likewise redefine and refocus their litigation strategies. This perceived hardship to the defendants does not warrant a stay pending final resolution of the bankruptcy proceedings, but rather, justifies only a temporary respite so that they may accomplish the re-grouping made necessary by the departure of Johns-Manville. The instant stays and the delays inherent in these appeals have more than amply provided that respite.
 
 
 20
 Defendants insist that the stays are warranted because discovery involving Johns-Manville is difficult, if not impossible, since the bankruptcy court has limited access to Johns-Manville records and personnel. The limitations imposed by the bankruptcy court, to facilitate preparation of the reorganization plan, are temporary. Regardless, no showing was made reflecting prejudice from these protective discovery orders. Much of the discovery was completed before the limiting orders were issued, and the pertinent information is often available--as past conduct has shown--from the filings in prior litigation. Of particular relevance, in the instant cases we find no meaningful complaint about discovery difficulties. No defendant suggests that it has been thwarted in any attempt to secure needed discovery.
 
 
 21
 Similarly, there has been no showing of unfair prejudice resulting from potential questions or conflicts of jurisdiction between the bankruptcy courts and the district courts as to claims against the co-defendants. Any such "hardship" is inevitable where several courts must grapple with discrete parts of a pervasive and complex matter. Questions of contribution, indemnity and apportioned liability are serious issues which will neither self-destruct nor disappear. They will have to be confronted and resolved at some time in some forum. Defendants have not shown that any hardship complained of is the result of proceeding to trial now. Nor is there a showing that the difficulties inherent in the general situation, including potential judicial inefficiency, constitute a sufficient offset to the plaintiffs' rights to proceed without inordinate delay to a resolution of their claims.
 
 
 22
 In practical terms the defendants are distressed principally because they must withstand the plaintiffs' assaults without Johns-Manville's presence, with all that entails. That development may not be laid at the doorstep of the plaintiffs, nor is it likely to be a situation preferred by them. The intense desire of the co-defendants to suspend all litigation until Johns-Manville and Unarco are again at their sides is understandable but is not sufficient justification for all-encompassing stays. Because the reorganizing defendants, as joint tortfeasors, are not indispensable parties under federal law, see Herpich v. Wallace, 430 F.2d 792 (5th Cir.1970), or Louisiana law, see Williams v. Pelican Creamery, 30 So.2d 574 (La.App.1947), their absence from litigation may be unfortunate to most or even all parties--but is not fatal to the actions. See Austin v. Unarco Industries, Inc.; Neubauer v. Owens-Corning Fiberglas Corp., 26 B.R. 644 (E.D.Wis.1983).
 
 
 23
 The careful balancing of interests mandated by the Supreme Court in Landis requires that the stays granted in the instant cases be vacated. Our holding in no way limits a district court's broad control over its docket or its usual discretion regarding stays. Nor do we suggest that no stay could ever be justified in this complex maze of litigation. We speak not in absolutes, but find that in the situations posed by the cases now before us, the stays were improvidently granted.
 
 Direct Action
 
 24
 The plaintiffs in Wedgeworth v. Fibreboard Corp. attempted to amend their complaints to add, as party defendants, the insurance carriers of Johns-Manville and Unarco, pursuant to the Louisiana Direct Action Statute, La.R.S. 22:655. The district court denied leave to amend.
 
 
 25
 Under Fed.R.Civ.P. 15(a), permission to amend "shall be freely given when justice so requires." Although our review is limited to determining whether the trial court's decision is an abuse of discretion, the policy of liberal amendment directs that "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir.1981). The most common factors justifying such a denial are undue delay, bad faith, repeated failure to amend, and unfair prejudice to the opposing party. E.g., Union Planters National Leasing, Inc. v. Woods, 687 F.2d 117 (5th Cir.1982); Dussouy, 660 F.2d at 598.
 
 
 26
 None of these factors supports denial of leave here. The plaintiffs' delay in suing the insurers was not "undue." "[W]here the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate." Dussouy, 660 F.2d at 599. Until Johns-Manville and Unarco filed for reorganization it was not essential to name their liability insurers as defendants. In addition, the remaining defendants have not shown that they would be unduly prejudiced by amendment to include the insurers; indeed, the contrary should be apparent. And there is not even a whispered suggestion that plaintiffs' attempt to amend is in bad faith.
 
 
 27
 Since the plaintiffs pursued amendment timely, properly, and responsibly, denial would be appropriate only if there is no legal basis for involving the liability insurers. There is such a basis under settled Louisiana law.
 
 
 28
 The day is long past when one may argue that Louisiana's statutory scheme does not apply to situations like that at bar. Section 655 of Title 22, Louisiana Revised Statutes, provides in part:
 
 
 29
 [A]n injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido.... This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.
 
 
 30
 See Shockley v. Sallows, 615 F.2d 233 (5th Cir.1980). This protection applies irrespective of the present status of Johns-Manville or Unarco, since "the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy ...," Sec. 655. The statute expressly envisions claims as presented in the instant suit, giving a legal and substantive basis for plaintiffs' direct action amendment.
 
 
 31
 The district court cited the potential advantage to Louisiana residents, compared to non-Louisiana asbestosis victims, if direct action were allowed. But this advantage is the result of a fair and constitutional implementation of "Louisiana's legitimate interest in safeguarding the rights of persons injured there." Watson v. Employers Liability Assurance Corp., 348 U.S. 66, 73, 75 S.Ct. 166, 170, 99 L.Ed. 74 (1954). "Louisiana's direct action statute is not a mere intermeddling in affairs beyond her boundaries which are no concern of hers." Id. at 72, 75 S.Ct. at 170. See Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed.2d 59 (1954). Louisiana may not force other states to adopt the direct action vehicle; neither may those states, by exercise of legislative will in declining such a provision, directly or indirectly negate Louisiana's legitimate and constitutional choice to provide its injured residents protection in the exact situation faced here. "[T]he Full Faith and Credit Clause does not compel Louisiana to subordinate its direct action provisions to Massachusetts contract rules." Watson, 348 U.S. at 73, 75 S.Ct. at 170. Or to the contract or tort rules of Alabama, Alaska, Arizona, or any other of its sister states. That Louisiana has provided an advantage to its tort victims is not a proper justification for denying plaintiffs' leave to amend. Leave to amend should have been granted.
 
 
 32
 Finally, we consider whether the stay protections accorded Johns-Manville and Unarco under 11 U.S.C. Sec. 362 should apply to their insurance carriers in Louisiana. Since the institution of the direct action, litigants have argued that the tortfeasor-insured is an indispensable party to a suit against the insurer. "Clearly under the Louisiana statute and practice the argument has no merit. And the circumstances which have led the federal courts to findings of indispensability are not present here." Lumbermen's Mut. Cas. Co., 348 U.S. at 52, 75 S.Ct. at 154 (footnote omitted).
 
 
 33
 We cannot read the language of Sec. 362(a)(1), "against the debtor," as including the debtor's liability insurers. Nor does any other provision of Sec. 362 grant the insurer an automatic stay. Section 362, as discussed above, provides a narrow protection directed at the debtor and its estate. Those interests are not automatically impinged by suit against the debtor's liability insurer in an instance in which the payments by the insurer cannot inure to the debtor's pecuniary benefit. Such is the situation in the case at bar. A payment by the liability carrier will neither enhance nor decrease the bankruptcy estate.
 
 
 34
 Nor would a discretionary stay be justified. As with the action against the co-defendants discussed above, no showing is made that the burden on the insurers is either unfair--since it is a responsibility assumed by contract subject to controlling state, in this instance Louisiana, law--or sufficient to outweigh the Louisiana plaintiffs' recognized interests.
 
 
 35
 The bankruptcy court handling the Johns-Manville reorganization has opined that its stay order extends to Johns-Manville's insurers. In re Johns-Manville Corp., 26 B.R. 420, 434-37 (Bkrtcy.S.D.N.Y.1983) (on rehearing, reversing earlier ruling allowing direct actions). The bankruptcy judge cited the policies favoring resolution of all insurance issues in one forum. But this worthwhile goal cannot vitiate Louisiana's clear, constitutional, and dispositive decision to allow direct actions against liability insurers. A blanket ban conflicts with the state's specific protection for injured parties and thus must yield. To rule otherwise we would have to ignore the express language of La.R.S. 22:655.
 
 
 36
 The bankruptcy court is empowered to extend reasonable protection to the bankrupt's assets. There has been no showing of a threat to those assets. To the extent the bankruptcy court would seek to go beyond that protective measure, it overreaches. Accordingly, the district court is empowered and obliged to consider plaintiffs' direct action claims to the extent that the bankrupts' assets are not directly involved nor seriously endangered.
 
 Conclusion
 
 37
 The claims against the co-defendants and, where applicable, against the liability insurance carriers of Johns-Manville and Unarco are to proceed in regular order. We hold that no stay order, based solely on the existence of the pending bankruptcy proceedings involving Johns-Manville and Unarco, may validly issue. Accordingly, the district court's order denying stay in Fontenot v. Fibreboard Corp. is AFFIRMED. The stay orders in Wedgeworth v. Fibreboard Corp. and Davis v. Johns-Manville Products are VACATED. The order denying amendment in Wedgeworth v. Fibreboard Corp. is REVERSED. These cases are REMANDED for further proceedings consistent herewith.
 
 
 38
 ON PETITION FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC
 
 PER CURIAM:
 
 39
 On rehearing, we recall and vacate that portion of our original opinion relating to the Wedgeworth v. Fibreboard Corporation case entitled "Direct Action," supra at 546-48. In lieu thereof we now hold that the district court did not abuse its discretion in declining to permit the plaintiffs to amend their complaints to add, as party defendants, the liability insurance carriers of Johns-Manville and Unarco. Subject to this revision, the opinion in the consolidated cases is reaffirmed and the petition for rehearing is DENIED. Further, no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 35), the Suggestions for Rehearing En Banc are DENIED.
 
 
 
 [1]
 The petition was filed by Johns-Manville Corporation and 20 of its subsidiaries or affiliates, including Johns-Manville Sales Corporation, the division primarily involved in the asbestos litigation
 
 
 [2]
 Sec. 362. Automatic stay
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of--
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 (3) any act to obtain possession of property of the estate or of property from the estate;
 (4) any act to create, perfect, or enforce any lien against property of the estate;
 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
 (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
 (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
 (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.
 
 
 [3]
 Because we hold that the stay against the reorganizing parties does not automatically extend to the co-defendants, we need not explore the impact of the Supreme Court decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., --- U.S. ----, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), on the bankruptcy courts' power to issue the original stay orders. We observe, however, that a similar Local Rule authorizing jurisdiction has been found constitutional by this court, In re Braniff Airways, Inc., 700 F.2d 214 (5th Cir.1983)