In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

JOHNS–MANVILLE CORPORATION, et al., Plaintiffs,

v.

The ASBESTOS LITIGATION GROUP, et al., Defendants.

OCCIDENTAL CHEMICAL CORPORATION, Plaintiff,

v.

JOHNS–MANVILLE CORPORATION, Defendant.

Beatrice Mae HANSEN, individually and as an independent executrix of the Estate of Andrew T. Hansen, deceased, Plaintiff,

v.

JOHNS–MANVILLE SALES CORPORATION, Defendant.

JOHNS–MANVILLE SALES CORPORATION, et al., Movants,

v.

Edward J. JANSSENS, Patsy J. Janssens, Wayne Hogan, Brown, Terrell & Hogan, P.A. and Ronald Motley, Respondents.

Bankruptcy Nos. 82 B 11656 to 82 B 11676.

Adv. Nos. 82–6377A, 82–6451–A and 82–6450A.

United States Bankruptcy Court, S.D. New York.

Sept. 15, 1983.

See also 26 B.R. 420.

Levin & Weintraub & Crames, New York City (Herbert Edelman and Barry N. Seidel, New York City, of counsel), and Davis, Polk & Wardwell, New York City (Miriam G. Cedarbaum and Sharon Katz, New York City, of counsel), for debtors.

Milbank, Tweed, Hadley & McCloy, New York City, for creditors committee; John Gellene, New York City, of counsel.

Moses & Singer, for asbestos plaintiffs; Michael Kushner, New York City, of counsel.

Jerome Feller, New York City, for S.E.C.; Philip Rantzer, New York City, of counsel.

Hahn & Hessen, New York City, for Equity Sec. Holders; Angela G. Tese, New York City, of counsel.

Cornelus Blackshear, New York City, U.S. Trustee.

Anderson, Russell, Kill & Olick, P.C., New York City, for Keene Corp.; Stephen Shimshak, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Owens-Illinois; Ellen Werther and Matthew J. Gold, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Commercial Union Ins. Co.; William M. Silverman, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for Travelers Indem. Co.; Peter J. Schlesinger, New York City, of counsel.

Heller, Ehrman, White & McAuliffe, San Francisco, Cal. (Curtis M. Caton, San Francisco, Cal., of counsel), Lawrence S. Fater and Wayne Palmer, Denver, Colo., for Johns-Manville Corp.

Clapp & Eisenberg, Newark, N.J., for Welsh & Norton Co.; Mark Falk, Newark, N.J., of counsel.

Leonard Sheft & Associates, New York City, for Puritan Ins. Co.; Jeffrey A. Marshall, New York City, of counsel.

Leib, Kraus & Grispin, Scotch Plains, N.J., for Albert Jung; Walter L. Leib and Gary E. Roth, Scotch Plains, N.J., of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPLEMENTAL TO DECISION NO. 2 ON REHEARING

BURTON R. LIFLAND, Bankruptcy Judge.

The various adversary proceedings captioned above involved motions and cross-motions brought on for hearing before this Court regarding the extent to which the automatic stay under Sections 362 and 105 of the Bankruptcy Code ("Code") authorized this Court to stay certain actions and proceedings affecting or relating to Johns-Manville Corporation, debtor and debtor-in-possession, and other affiliated debtors and debtors-in-possession herein (collectively "Manville") and, in particular, the extent to which the cited sections of the Code applied to actions or proceedings brought against or

involving former, present and future officers, directors, employees, contractors, consultants, insurers, sureties, agents and like persons and entities of Manville (collectively "Employees, Agents and Others"). This Court following re-hearing granted of its Decision No. 2 (26 Br. 420) issued on April 14, 1983 its "Counter-Order on Decision No. 2" in which it was ordered that:

"1. Suits and discovery proceedings against or directed to any former Employees, Agents and Others may proceed.

2. Apart from discovery authorized by this Court pursuant to Bankruptcy Rules 205, 10–26 and 11–15, all entities are hereby stayed, restrained and enjoined from commencing and conducting discovery proceedings against or directed to any current Employees, Agents and Others who have not been named in their individual capacity as a party to a suit.

3. Suits and discovery proceedings against or directed to any current Employees, Agents and Others who have been named in their individual capacity as a party to a suit may proceed; *provided, however,* that all entities are hereby stayed, restrained and enjoined from commencing or continuing any suits and commencing or conducting any discovery proceedings against or directed to any of the 'key' Manville personnel identified in Exhibit 'A' appended hereto, which exhibit is incorporated herein and deemed a part hereof.

4. The Related Orders shall remain in full force and effect and are incorporated herein by reference; *provided, however,* that to the extent this Order is in any way inconsistent with the Related Orders, this Order and the contents hereof shall be deemed to supercede and modify the Related Orders and the contents thereof.

5. Jeffrey Hermann and Linda J. Hermann, plaintiffs in the Hermann Litigation, are stayed, restrained and enjoined from continuing that litigation for the duration of Manville's chapter 11 proceedings.

6. All entities are hereby stayed, restrained and enjoined from commencing, conducting or continuing any direct action suits against Manville's insurers and sureties and from commencing, conducting or continuing any discovery proceedings therein, whether such direct actions suits arise by statute or at law or in equity.

7. All entities are hereby stayed, restrained and enjoined from requesting discovery or requiring the production of any and all of Manville's trade secrets or other confidential research, development or commercial information or any and all documents of a scandalous or defamatory nature or matter without prejudice to the application of any party to be relieved from the provisions of this paragraph.

8. Except to the extent granted herein, the applications of Occidental Chemical Corporation, Keene Corporation and Lake Asbestos of Quebec, Ltd. for orders clarifying or otherwise modifying Decision No. 3 in all other respects are hereby denied.

9. The injunctive relief granted in paragraph '3' hereinabove is and shall remain in full force and effect throughout the period during which Manville shall have the exclusive right to file a plan or plans of reorganization pursuant to § 1121(d) of the Code.

10. Manville is hereby authorized to expend a sum not exceeding $100,000 in the aggregate to monitor and enforce the provisions of this Order, including but not limited to making payments to local counsel for such purposes.

11. This Order is and shall be without prejudice to any and all of the parties affected hereby to seek such other and further related relief as may be appropriate, giving effect to the relevant facts and circumstances then extant, upon notice to all parties affected thereby, to the extent such application may be necessary and warranted in the interests of justice and the orderly administration of the Manville estates."

On May 25, 1983 the United States Court of Appeals for the Fifth Circuit issued its Slip Opinion in three consolidated cases: affidavit of service indicating its compliance with the request of this Court and

*Ned Wedgeworth Jr., et al. v. Fibreboard Corporation, et al.,* 706 F.2d 541, *Pearl Fontenot v. Fibreboard Corporation, et al.,* 706 F.2d 541 and *Ernest Davis, Sr. v. Johns-Manville Products, et al.,* 706 F.2d 541. In that Opinion, the Fifth Circuit held, among other things, that the District Court in the *Wedgeworth* case had erroneously denied leave to the plaintiffs to amend their complaints to allege causes of action against Manville's insurers under Louisiana's direct action statute (Section 655 of Title 22, Louisiana Revised Statutes). The conclusion reached by the Fifth Circuit was premised on its belief that this Court had "overreached" by the provisions of Counter-Order on Decision No. 2 which stayed actions against Manville's insurers (i.e., Decretal Paragraph No. 6). Based on its reasoning the Fifth Circuit vacated the stay orders issued by the District Courts in both the *Wedgeworth* and *Davis* cases, reversed the order denying leave to amend complaints to include Manville's insurers in the *Wedgeworth* case, and affirmed the Order of the District Court denying a stay of the proceedings in the *Fontenot* case.

As its response to the Slip Opinion issued by the Fifth Circuit, Travelers Indemnity Company ("Travelers") filed a Petition for Rehearing and a Suggestion for Rehearing *In Banc* as an "aggrieved non-party". Those applications, for which leave to file was granted by the author of the *Wedgeworth* opinion, were filed with the Fifth Circuit on June 6, 1983 and remained as of the trial date on the instant matters *sub judice* before the Court.*

On June 16, 1983 Travelers presented to this Court an Order to Show Cause. The relief sought by Travelers was:

"(1) an extension of the stay granted by this Court pursuant to Sections 362 and 105 of the Bankruptcy Code to embrace any and all actions instituted against present and former officers, directors and employees of Manville which Travelers has been called upon by Manville to defend and indemnify, and

(2) to provide notice to all plaintiffs and their attorneys in any proceedings in which claims are made against present or former Manville officers, directors or employees, in direct actions or otherwise, under or arising out of insurance policies issued by Travelers to Manville that any activity which advances such proceedings toward trial will result in contempt citations against such plaintiffs and their respective attorneys."

Papers on file with this Court reveal that the show cause order signed by this Court on June 16, 1983, together with the supporting papers, was served by Express Mail on June 17, 1983 upon more than 90 persons, firms or entities, each of whom represent specified interests in this bankruptcy case and the adversary proceedings which are above captioned.

Pursuant to the aforesaid Order to Show Cause, the Application of Travelers for the relief specified above came on for hearing before this Court on June 24, 1983 and a transcript of those proceedings consisting of approximately 30 pages was taken.

Toward the end of that hearing Manville's attorney requested an adjournment, which was granted by this Court, in order to provide Manville with an opportunity to file its application for relief similar to that sought by Travelers. Counsel for Travelers was requested by the Court to notify all parties previously served of the request for and grant of the adjournment. There has been lodged with this Court by Travelers an

---

* After this Court held an evidentiary hearing on the advisability of extending the automatic stay to cover the directors, officers and employees of Manville and a draft of its findings and conclusions was prepared, it was informed that the Fifth Circuit on September 12, 1983 denied rehearing but in a per curiam decision recalled and vacated the portion of its original opinion in *Wedgeworth* relevant to direct action suits. The Fifth Circuit now holds that "the district court did not abuse its discretion in declining to permit the plaintiffs to amend their complaints to add as parties defendant the liability insurance carriers of Johns-Manville and Unarco." Thus, the direct action suits in Louisiana remain stayed. However, the continuance of the stay of direct actions is only one aspect of the relief sought by Travelers and Manville herein. Accordingly, their application to this Court is not now moot.

showing that a Notice of the Adjournment and a copy of the transcript of the proceedings of June 24, 1983 was served upon each of the aforementioned interests.

On July 7, 1983, the date to which Travelers' application had been adjourned and on which Manville's application was to be returnable, Manville requested and was granted a further adjournment to July 19, 1983 to file its application. Counsel for Travelers was once again requested to notify all interests of that additional adjournment.

Counsel for Travelers has lodged with this Court an affidavit of service showing its compliance with that request by the Court.

Thereafter Manville filed with this Court, and served on all interested parties, an Order to Show Cause and supporting papers in which it sought an order:

"(a) extending the stay Order to stay, restrain and enjoin all entities from commencing or continuing any action (including discovery proceedings) against any present, former or future directors, officers or employees of Manville whether or not they have been named in their individual capacities as a party to any such actions; and

(b) granting Manville such other and further relief as may seem just and proper."

Manville's Order to Show Cause was returnable before this Court on July 19, 1983.

On July 19, 1983 this Court heard further oral argument in support of the Travelers and Manville Applications. A transcript of approximately 60 pages was taken, and the Court, from the bench, made certain rulings appearing in that transcript at pages 37 through 57 [see appendix at pages 264 through 271]. In the course of those rulings, the Court reaffirmed its judgment that its jurisdiction over the Manville Bankruptcy is exclusive by reason of the fact that Manville's Petitions were filed in this Court (see Title 28 U.S.C. § 1471(e)). Transcript of July 19, 1983 at 53 [see appendix at 269]. A copy of this Transcript is annexed hereto and made a part of these Findings of Fact and Conclusions of Law. In

addition, this Court determined that its earlier holding that the Manville insurance policies were "property of the [Manville] estate" had been buttressed by the decision of the United States Supreme Court in *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Transcript of July 19, 1983 at 42–44 and at 49 [see appendix at 266 and at 268]. This Court also held that it might, in its discretion, expand the stay as requested in the applications filed by Travelers and Manville notwithstanding the views of the Fifth Circuit, in the *Wedgeworth* case, to the contrary. Transcript of July 19, 1983 at 49 [see appendix at 268]. This Court stated that "the Fifth Circuit's holding that the Bankruptcy Court exceeded its jurisdiction in issuing the stay Order does not bind the Bankruptcy Court." Transcript of July 19, 1983 at 52 [see appendix at 269].

Based upon the matters which had been presented to this Court in the applications filed by Travelers and Manville, and based upon the oral arguments made to this Court on July 19 by counsel for Travelers and Manville, this Court determined that in order to rule on the Travelers and Manville applications, an evidentiary hearing was required. Transcript of July 19, 1983 at 54 [see appendix at 269]. The Court also indicated its concern that parties interested in, or affected by, the Travelers and Manville applications "be given a full opportunity to take part in that evidentiary hearing": "It is noteworthy that there is nobody here basically contesting the relief requested and yet I must, with all candor, give those parties every opportunity, although they have had ... three opportunities now." (Transcript of July 19, 1983 at 57 [see appendix at 270].)

This Court once again requested counsel for Travelers to provide all persons on the earlier service list with notice of the evidentiary hearing and a copy of the transcript of the proceedings of July 19, 1983. There has been lodged with the Court an affidavit of service showing compliance with that request.

There have been filed with the Court, in addition to the Orders to Show Cause of Travelers and Manville and the papers in support thereof, additional documents, all of which have received the Court's full consideration. Those documents include a letter filed on behalf of the Official Committee of Unsecured Creditors supporting the Travelers application; an objection of limited form to Traveler's application filed by Lac D'Amiante du Quebec, Ltee. ("Lake") (this objection related solely to the possibility of the impairment of the co-defendants' ability to conduct discovery should the Travelers' application be granted); Lake's objection was later withdrawn in its Supplement of July 18, 1983 based on Travelers' disavowal of "any intent to alter, amend or modify the discovery provisions of Decision No. 2" and Lake's assumption that the matter had been satisfactorily resolved; a letter dated July 5, 1983 from the law firm of Gertler & Gertler, a professional law corporation, accompanied by a document entitled "Louisiana Plaintiffs' Memorandum in Opposition to Travelers Insurance Company's Motion for Extension of Stay and Request for Notice of Contempt" (the Gertler firm represents more than 100 of a total of 180 Louisiana plaintiffs who claim asbestos-related diseases in their lawsuits brought against Manville, Manville's entities, Manville's past and present officers, directors and employees and Travelers); a letter dated July 6, 1983 from the law firm of Clapp & Eisenberg in opposition to Travelers' application on behalf of their clients, two former respirator manufacturers, the Welsh Division of Textron, Inc., and the Norton Company (this opposition is also limited in its scope to the effect that the grant of the Travelers' application might have upon the abilities of Welsh and Norton to conduct additional pre-trial discovery in actions against them which are not subject to any stay); a reply memorandum filed by Travelers accompanied by the affidavit of Peter J. Schlesinger, Esq., sworn to July 15, 1983; the objection of Owens-Illinois to the Travelers and Manville applications dated July 18, 1983 (this objection is limited to the effects which the grant of the applications might have upon Owens-Illinois' ability to conduct discovery in lawsuits pending against it); an undated Notice to Produce served upon counsel to Travelers by Singer Hutner Levine Seeman & Chase, P.C., counsel to the firm of Gertler & Gertler, a professional corporation; a cover letter dated August 4, accompanied by the "Response and Objections to Notice to Produce", each of which was filed by Travelers; a subpoena duces tecum served upon Manville by Singer Hutner Levine Seeman & Chase, P.C., and a Notice to Produce served upon Manville's counsel Levin & Weintraub & Crames; an Order to Show Cause signed by this Court on August 4, 1983 relating to the application by Manville to quash the Notice to Produce and subpoena; the affidavit sworn to July 13, 1983 of William M. Silverman, a member of the firm of Otterbourg, Steindler, Houston & Rosen, PC. (which together with the firm of Palmer & Dodge represents Commercial Union Insurance Company) supporting Travelers' application; the pre-hearing memorandum of law dated August 3, 1983 filed by Manville in support of its application; the pre-hearing memorandum dated August 5, 1983 filed by Travelers in support of its application; a Memorandum dated August 5, 1983 and supporting papers of certain executive officers of Manville in support of the Travelers and Manville applications filed by Jones, Walker, Waechter, Poitevent, Carrere & Denegre; and the memorandum in opposition to the Travelers and Manville applications filed by the law firm of Gertler & Gertler. Each of these documents has received the full consideration of this Court in reaching its determination on the Travelers and Manville applications.

On August 9, 1983, an evidentiary hearing was held before this Court and a transcript consisting of approximately 270 pages was taken. At the hearing, appearances were noted on behalf of the following parties: the Debtors, Johns-Manville Corporation and related entities; the Official Committee of Unsecured Creditors; the Asbestos Plaintiffs Committee; the Securities and Exchange Commission; the Equity Security Holders; Keene Corporation; Owens-Illinois; Commercial Union Insurance

Company; GAF Corporation; Travelers Indemnity Company; Puritan Insurance Company; Lake Asbestos; and Gertler & Gertler, pro se. During the course of that evidentiary hearing, witnesses were offered by Travelers and Manville (and cross-examined by the law firm of Gertler & Gertler), exhibits were received in evidence and a full opportunity was given for the presentation of evidence by all persons to whom notice of the Travelers and Manville applications had been provided from on and after June 17, 1983.

· Based upon all of the pleadings filed with this Court and recited above, based upon the record of the proceedings held before this Court on June 24, July 19 and August 9, 1983, and based on all pleadings filed in this court with respect to its hearings prior to its ruling in Decision No. 2, and due deliberation having been had thereon, the Court now adds to its Decision No. 2 on rehearing these Supplemental Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On January 26, 1983 this Court, on rehearing, issued Findings of Fact and Conclusions of Law relating to the application then pending before it that the automatic stay provided for in Section 362 of the Bankruptcy Code be extended, pursuant to Section 105(a) of the Bankruptcy Code, to stay and enjoin any and all further proceedings in cases then pending against Manville's insurers brought by third party claimants in those states which either permit direct actions against insurance carriers by statute or by decisional law.

2. The Findings of Fact and Conclusions of Law referred to in Paragraph 1 above, all of which are reported at 26 B.R. 420 at 435–437, are herewith reaffirmed by this Court in their entirety.

3. On May 24, 1983 the United States Court of Appeals for the Fifth Circuit issued a Slip Opinion in three consolidated cases pending before it, the lead case of which is captioned *Wedgeworth v. Fibreboard Corporation et al.* That Slip Opinion held that direct actions against Manville's

insurers were to proceed and that amendments to pleadings which would have added as defendants Manville's insurers would be allowed. *But see* footnote on page 257 *supra.*

4. This Court's Counter-Order on Decision No. 2, in paragraph "11" thereof, authorizes any party affected by that Order "to seek such other and further related relief as may be appropriate, giving effect to the relevant facts and circumstances then extant, upon notice to all parties affected thereby, to the extent such application may be necessary and warranted in the interests of justice and the orderly administration of the Manville assets."

5. The Order to Show Cause brought on by Travelers and the Order to Show Cause brought on by Manville each rely on the provisions of paragraph "11" of Counter-Order on Decision No. 2 as the basis for invoking the jurisdiction of this Court with respect to the relief sought in their respective applications.

6. Based upon its prior consideration of certain of the matters raised by the Travelers and Manville applications, this Court reiterates, on the evidence before it, that the insurance policies issued to Manville, including those policies issued by Travelers, are property of the Manville estates.

7. There are presently pending approximately 1,000 cases in which past and present directors, officers and employees of Manville are named as defendants. This includes cases in New Jersey (nearly 800 cases pending) and Louisiana (over 180 cases pending), as well as in California, Illinois and Pennsylvania. By far the bulk of these cases involve claims brought by past or present Manville employees, alleging a failure to warn of potential hazards in the work place.

8. The actions pending against past and present officers, directors and employees in the State of Louisiana alone involve claims which exceed $200,000,000. Nationwide, the potential damage claims are in excess of $230,000,000.

9. Travelers Insurance Company was the primary insurer for Johns-Manville Cor-

poration for each year from 1947 through 1976. The policies of insurance issued to Manville by Travelers cover, by their express terms, not only the Manville corporate entities, but, in addition, Manville's executive officers and directors, and for certain years Manville "employees."

10. In the event of a recovery against the past or present officers, directors or employees of Manville in any of the pending 1,000 cases, Manville's insurers may be called upon to indemnify such officers, directors and employees under the provisions of the policies issued by them to Manville. If such insurers are called upon to make such indemnification payments, those payments may cause an asset of the Manville estates to be diminished.

11. The pending claims against Manville's officers, directors and employees may fall within the "premises/operations" coverage in Travelers' policies. In addition to being available to individual insureds, this coverage may also be available, in certain situations, to the Manville corporate entities. This may be the case, for example, where there is a claim by a plant worker employed by Johns-Manville Sales Corporation against the parent entity, Johns-Manville Corporation. There presently are approximately 200 such claims pending in the State of California alone.

12. Travelers has stipulated that its policies issued to Manville cover both product liability claims and premises/operation claims and that each such coverage has a separate pool of funds and separate policy limits.

13. It is the position of Travelers that its potential liability for all premises/operations claims is $16,000,000. Travelers further contends that this is a finite limit and that a payment under the premises/operations coverage on behalf of an insured Manville officer, director or employee reduces dollar-for-dollar the amount available to pay claims brought elsewhere against the corporate insureds. Manville disputes this claim, and denies that there is any finite limit to the premises/operation coverage. The resolution of this dispute involves an interpretation of the terms of Travelers' policies, and in particular, a determination of the meaning of the phrase "per occurrence" as it appears in Travelers' policies.

14. The meaning of the phrase "per occurrence" as it appears in Manville's policies of insurance issued by Travelers is presently at issue in the Coordinated Asbestos Coverage Litigation pending in the Superior Court of the State of California. The Court specifically finds that Travelers and Manville have raised sufficiently serious questions going to the merits of the issue of the limitations on Travelers' liability, and the issue of the meaning of the phrase "per occurrence", to make them fair grounds for litigation.

15. In addition to primary insurance from Travelers, Manville has insurance from over two dozen other carriers who provided excess insurance to Manville for 1947 through the present. These insurers also provided liability coverage to Manville directors, officers and employees, in addition to the Manville Corporate entities. For example, Debtors' Exhibit 1 in evidence is a Home Insurance Company policy, No. HEC 9543374, which provides excess coverage to Manville from July 1, 1963 to July 1, 1966, and defines "insured" to include "any officer, director, stockholder, partner or employee of the named insured ..."

16. The policies of insurance issued by Travelers to Manville contain for the policy years 1974–1975 and 1975–1976 a provision entitled "Priority" which provision is susceptible of an interpretation which might require Travelers to honor claims for indemnification by Johns-Manville Corporation over claims for indemnification by other Manville corporate entities and other insureds such as present and former directors, officers and employees of the Manville corporate entities.

17. Travelers has informed Manville that, in the event actions against Manville's officers, directors or employees go forward, Travelers will assert in many of those cases a number of defenses and limitations to coverage, as set forth in Debtors' and Louisiana Plantworkers' Exhibit 2 in evidence.

The policies at issue here are the policies that are at issue in the Coordinated Asbestos Coverage Litigation in California. If Travelers asserts its defenses and limitations, Manville will be compelled to represent its own interests with respect to the policies at issue, including retaining outside counsel in each case, developing and using experts in each case, and utilizing its outside counsel in the Coordinated Asbestos Coverage Litigation to supervise and coordinate the defenses in each of these actions. All of this will necessarily involve the time, effort and resources of Manville and will thereby require a diversion of the attention of Manville's personnel from the formulation of a plan of reorganization. The attention of Manville personnel will be diverted even in those situations where Travelers has waived defenses and arguments as to coverage limitations in defending claims against Manville's officers, directors or employees.

18. To the extent these actions proceed and involve interpreting the terms of Manville's insurance policies, there is a very real risk of inconsistent verdicts with respect to key issues now in dispute in the Coordinated Asbestos Coverage Litigation.

19. In the event Manville's insurers are successful in contesting coverage for individual insureds, Manville might suffer further financial drain, as a result of potential claims directly against Manville for indemnification. Furthermore, in the event judgments are entered against individual insureds which exceed available coverage, such insureds may also seek indemnification from Manville. In either event, those Manville officers, directors and employees could constitute an entirely new class of creditors against the Manville estates with respect to such indemnification claims. Certain individuals have already asserted indemnification claims against Manville. This further financial drain due to indemnification would occur even in situations where Travelers has waived defenses and coverage limitations arguments in defending claims against Manville's officers, directors or employees.

20. If Travelers' position on the limits of its premises/operations coverage is sustained in the Coordinated Asbestos Coverage Litigation in California, Travelers could potentially have claims in administration against the Manville estates of a sizeable magnitude which would diminish the recoverable value of the claims of other claimants.

21. To the extent that the pendency of lawsuits against past and present officers, directors and employees causes a diversion of Manville's efforts to the defense of those lawsuits, based upon the requirement contained in many of the policies of insurance issued to Manville that it cooperate in all cases which it tenders to its insurers, the resources and energies of Manville will be further diverted from the important task of plan formulation.

## CONCLUSIONS OF LAW

1. The relief sought by Travelers and Manville in their respective applications is governed by the legal test for the grant of a preliminary injunction.

2. The test for the grant of a preliminary injunction in the Second Circuit requires that the movant demonstrate (a) possible irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*); *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1358–59 (2d Cir.1976); *Textron, Inc. v. Teleoperator Systems Corp.,* 554 F.Supp. 315, 326 (E.D.N.Y.1983); *Dabney v. Reagan,* 542 F.Supp. 756, 762–763 (S.D.N.Y.1982).

3. Based upon the record before me and the Findings of Fact set forth above, it is clear that that branch of the test for the grant of a preliminary injunction which requires the showing of possible irreparable harm has been satisfied by the showing

made by Travelers and Manville. Travelers and Manville have demonstrated an immediate and irreparable impact on the pool of insurance assets and other financial drain caused to the J–M estate by, for example, the impending trial date for one of the Louisiana cases set for September 26, 1983.

4. Based upon the record before me and the Findings of Fact set forth above, the alternative portion of the second branch of the test for preliminary relief, namely, the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation has been met by the showings made by Travelers and Manville. Given the present setting of this reorganization, Travelers and Manville have equally satisfied the requirement of showing that the hardships tip decidedly in their favor as opposed to the claimants who have instituted the actions against present and former officers, directors and employees of Manville.

5. This Court's Conclusion of Law reached on January 26, 1983, on rehearing, to the effect that Manville's rights under its insurance policies and the policies themselves are property of the Manville estates within the meaning of Section 541(a) of the Bankruptcy Code has been buttressed by a recent decision of the United States Supreme Court. *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In this regard, see transcript of July 19, 1983 at pages 37–49.

6. Upon the filing of the Chapter 11 Petition by Manville with this Court, this Court was vested with exclusive jurisdiction over the property of the Manville estates, pursuant to Section 1471(e) of the Bankruptcy Code. *See* transcript of July 19, 1983 at 49–57.

7. Determinations by this Court relating to and affecting the Manville estates and the rights of its creditors are reviewable, in the first instance, by the United States District Court for the Southern District of New York and are thereafter reviewable by the United States Court of Appeals for the Second Circuit, with eventual possible review by the United States Supreme Court.

See *Cathey et al. v. Johns-Manville Sales Corporation,* 711 F.2d 60 (S.D.N.Y.1983).

8. That portion of the original decision of the United States Court of Appeals for the Fifth Circuit in the *Wedgeworth* cases which dealt with "Direct Actions" and which has now been recalled and vacated, with all due deference to the Fifth Circuit, did not bind this Court. See, *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 56 (2nd Cir.1976), *cert. den. Camelia Builders, Inc. v. Fidelity Mortgage Investors,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), *reh. den.* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977). The automatic stay embodied within Section 362 is binding upon appellate courts in enjoining them from allowing actions in derogation thereof to proceed. *See, e.g., Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 690 F.2d 367 (3rd Cir.1982). *Ellison v. Northwest Engineering Co.,* 707 F.2d 1310, 1311 (11th Cir.1983); *Cathey v. Johns Manville, supra.*

9. Reiterating this Court's Conclusion of Law No. 4 as set out in its decision on rehearing of January 26, 1983 (26 B.R. 420 at 436), this Court, pursuant to Section 105(a) of the Bankruptcy Code, may extend the automatic stay under Section 362 of the Bankruptcy Code to stay and enjoin proceedings or actions by or against non-debtors where such actions would interfere with, deplete or adversely affect property of the Manville estates or which would frustrate the statutory scheme embodied in Chapter 11 or diminish Manville's ability to formulate a plan of reorganization.

10. Based upon the broad grant of power contained in Section 105(a) of the Bankruptcy Code, this Court, pursuant to Section 362(a) of the Bankruptcy Code hereby stays and enjoins all persons and entities, and their counsel from commencing, continuing or taking any action of any type against present, former or future officers, directors or employees of Manville or any of its corporate entities in any lawsuit or other proceeding.

11. The stay and injunction embodied in Conclusion of Law No. 10 is designed to preserve for the benefit of the Manville estates the proceeds of the pools of insurance issued to it which might otherwise be subject to dissipation in lawsuits commenced against present, former or future officers, directors and employees of Manville and the Manville entities. *In re Johns-Manville Corporation* (*Keene Corp. v. Johns-Manville Corp., et al.,* 83 Civ. 1744 (PNL)), 568 F.Supp. 83 (1983, S.D.N.Y.). *See also Fidelity Mortgage Investors, supra* at 55.

12. The importance of maintaining a single forum for the adjudication of these crucial coverage issues was set forth in this case by Judge Haight of the United States District Court for the Southern District of New York in *In re Johns-Manville Corp., (Commercial Union Insurance Co. v. Johns-Manville Corp.),* 31 B.R. 965 (D.C.S.D.N.Y. 1983). In *Commercial Union,* Judge Haight, relying in part on the earlier opinion of Judge Weinfeld in *American Motorists Insurance Co. v. Philip Carey Corp.,* 482 F.Supp. 711 (S.D.N.Y.1980), affirmed this Court's refusal to lift the stay to allow a partial determination of the Manville insurance issues in the United States District Court in Massachusetts. In so doing, Judge Haight reasoned that "it is preferable to resolve all these [insurance] issues in a single forum; and that piecemeal adjudication of these issues in different forums would be counterproductive. . . ." *Commercial Union,* 31 B.R., at 975. Judge Weinfeld in *American Motors* deferred consideration of an asbestos coverage issue to a state court which was considering the issue of coverage in a declaratory judgment action. He reasoned that "a binding judgment may be obtained determining the rights of all interested parties [which] would, in the end result, eliminate additional and proliferating litigation." *American Motorists,* 482 F.Supp. at 715. Failure to extend the automatic stay to cover former and present directors, officers and employees of Manville would permit a variety of courts to render varying and inconsistent judgments regarding the same key insurance coverage

issues. This is because these actions necessarily entail interpretations of the terms of these policies. These interpretations, in turn, have the potential to conflict with the determination of these very issues now being fully litigated in the California state court in the Coordinated Asbestos Coverage Litigation. Accordingly, the automatic stay must be extended to bar the suits against the directors, officers, and employees of Manville.

13. This Court's Counter-Order on Decision No. 2 issued April 14, 1983 is hereby modified and amended to delete therefrom paragraphs "1" and "3".

14. This Court's Counter-Order on Decision No. 2 is hereby amended by adding thereto a new paragraph designated as paragraph No. "1" which shall read as follows:

1. All entities are hereby stayed, restrained and enjoined from commencing, conducting or continuing any suits against any past, present or future officer, director or employee of Manville or against their insurers in direct action suits whether such direct action suits arise by statute or at law or in equity.

15. The provisions of decretal paragraph "3" of this Court's Counter-Order on Decision No. 2 will be modified and amended regarding the impact of these findings and conclusions on the discovery rights of the parties. The substance of that amendment will be detailed in a separate order to be filed with this court.

16. Except as herein and otherwise expressly modified and amended, this Court's Counter-Order on Decision No. 2 shall remain in full force and effect.

## APPENDIX

Transcript of Hearing, July 19, 1983

THE COURT: Travelers indemnity has submitted an application seeking further relief from Counter-Order on Decision Number 2 issued by this Court on April 14, 1983.

Travelers seeks to extend the automatic stay under Section 362 of the Code by virtue of Section 105 to preclude all actions against present and former officers and directors and employees of Manville which Travelers has been called upon by Manville to defend and indemnify.

Presently the automatic stay has been extended by virtue of this Court's Order dated April 14, 1983 based upon Decision Number 2 as amended to cover key Manville personnel.

This protection, however, is not afforded to any former employees and essentially Manville now seeks co-extensive relief.

On January 10, 1983 this Court issued a lengthy decision holding that the automatic stay would be extended in limited degree precluding suits against certain Manville employees and other related entities.

That stay did not extend to cover Manville's insurers and sureties.

On re-hearing on January 26, 1983, the automatic stay was extended to protect Manville's insurers and sureties from direct third party suits by Defendants. 26 B.R. 420/1983.

By order dated April 14, 1983 implementing Decision Number 2 as amended, limited relief was granted to extend to actions in discovery proceedings against or directed to any of the "key" Manville personnel.

Twenty-five current employees, agents and others were included in this list.

Direct action suits have been filed, and in Louisiana there are almost two hundred, in which Travelers has been named as a party Defendant. I assume that may be true for other Manville insurers, carriers.

In addition, in many of these cases, present and former officers, directors and employees of Manville are named in both their individual and corporate capacities.

This Court in its Counter-Order of April 14, 1983 stayed all entities from "commencing, conducting or continuing any direct action suits against Manville's insurers and sureties ... whether such direct action suits arise by statute, at law or in equity."

Notwithstanding that Order, the Fifth Circuit Court of Appeals held that the Louisiana direct litigation can go forward, *Wedgeworth v. Fiberboard Corporation,* 706 F.2d 541 (1983).

That Court opined that it was "Louisiana's clear constitutional and dispositive decision to allow direct actions against liability insurers. A blanket ban conflicts with the State's specific protection for injured parties and thus must yield." That's *Wedgeworth* at page 548.

Significantly the Fifth Circuit in Wedgeworth did not have before it the complete record of the hearings before this Court which prompted the Counter-Order on Decision Number 2.

It also did not explore the effect of the continuation of direct action suits on property of the Manville estate.

In addition, the Fifth Circuit did not address whether permitting the use of Louisiana's direct action statute impermissibly interferes under the Supremacy Clause of the U.S. Constitution with the constitutional authorization to Congress to establish laws relating to bankruptcy.

Also, that Court apparently did not consider whether and to what extent its opinion would lead to diverse and inconsistent results among Courts.

In connection with Wedgeworth, Travelers filed with the Fifth Circuit a Petition for Rehearing and a Suggestion for Rehearing In Banc as an aggrieved non-party entitled to be heard.

This petition was granted by Circuit Judge Politz, the author of the Court's recent opinion.

Travelers submitted this application, in part, in response to the emergency created by the Wedgeworth decision.

Travelers reports that in the wake of Wedgeworth, a Louisiana Magistrate Shavers has placed Louisiana cases on a " 'fast track' " to trial, and Louisiana State Judge Wicker ordered that the suits against executive officers proceed.

On June 21, 1983 Judge Charles Brieant, District Judge, Southern District of New York, stayed pending appeal all direct action suits against Manville's insurers.

This ruling is consistent with the jurisdiction of the Bankruptcy Court, the District Court and the Second Circuit over the Manville estate. Judge Brieant thereby ordered that, and I quote:

"All persons, and all attorneys for persons, having actual or constructive notice of this Order, throughout the United States and its territories and possessions, are hereby stayed, restrained and enjoined from commencing, conducting or continuing any discovery proceedings therein, whether such direct actions suits arise by statute or at law or in equity..."

Thus, this Court must assess these applications to expand the stay to cover all current and former Manville employees in light of the effect of the most recent Order by Judge Brieant and the Fifth Circuit's revisited posture of the Wedgeworth decision.

That this pool of insurance monies constitutes property of the Manville estate and must be protected has been clearly established by case law and the legislative history of the relevant sections of the Bankruptcy Code Chairman.

Under Code Section 541(a)(1), a debtor's estate is comprised of "all legal or equitable interests of the Debtor in property as of the commencement of the case" and "wherever located". Congress intended the scope of the section to be very broad.

It, Section 541(A)(1) includes all kinds of property, including tangible or intangible property, causes of action, and all forms of property currently specified in Section 70a of the Bankruptcy Act. House of Representatives Report Number 95–595, page 367, 1977, Senate Report Number 95–989, page 82, 1978, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6323.

The Supreme Court recently buttressed this broad concept of "property of the estate" in the United States against Whiting Pools, Inc., —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In Whiting Pools, the Internal Revenue Service seized the debtor's tangible personal property to satisfy a tax lien, after which the Debtor filed a petition for reorganization.

Ultimately the Supreme Court held that pursuant to Section 542(a), the reorganization estate includes property of the Debtor that has been seized by a creditor prior to the filing of a petition for reorganization.

At the heart of the decision was the Court's definition of "property of the estate" as a broad concept, specifically and primarily for the purpose of accommodating a viable rehabilitation effort.

The Court first noted that it viewed statutes which define "estate" as a delineation of what is included in the estate rather than as a limitation.

The Supreme Court therefore concluded, and I quote, "While there are explicit limitations on the reach of Section 542(a), none requires that the Debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." Whiting Pools, supra, page ——, 103 S.Ct. at 2314.

The Court briefly explained Congress' purpose in providing a broad definition of "estate":

Both the Congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.

Any other interpretation of Section 542(A) would deprive the bankruptcy estate of the assets and property essential to its rehabilitation effort and thereby would frustrate the Congressional purpose behind the reorganizational provisions.

Whiting Pools, supra, pages 2313 and 2315. Accord, State of Missouri against the United States Bankruptcy Court, 647 F.2d 768, 774, the Eighth Circuit in 1981.

Given this expansive definition of the reorganization, Manville's insurance policies and any proceeds therefrom are clearly property of the Manville estate.

The essence of the Whiting Pool opinion is that all property, whether in the debtor's possession or not, which is essential to a viable rehabilitation effort must be deemed property of the estate.

In the case at bar, Manville's insurance policies constitute one of its largest and most significant assets and are absolutely necessary for the formulation of any reorganization plan.

This is especially so given that Manville's bankruptcy is primarily the result of the massive number of tort actions filed against it.

The insurance assets are clearly fundamental to any resolution of these tort actions in the context of a plan.

Furthermore, the insurance policies have value to Manville, even though this value is of uncertain magnitude at this point.

Although the proceeds of such policies are not in the possession of the Debtor, this factor is unnecessary under the reasoning of the Whiting Pools decision.

Given that Manville is being sued in tort for actions that may be covered under these policies, and which the insurers may be called upon to defend, such insurance policies obviously have value to the Manville estate.

The Debtor corporation is a considerably more valuable company if its purported coverage is included within the estate.

Other Courts have held that insurance coverages property of the estate. See, for example, *In Re: Taylor,* 23 B.R., 539, 540 Bkrtcy. Southern District of Ohio 1981; *In Re: Pearl-Wick Corporation,* 15 B.R. 143, this Court, affirmed, 26 B.R. 604 Southern District of New York, affirmed again 697 Fed.2d 295 Second Circuit 1982; *In Re Moskowitz,* 13 B.R. 357, Bankruptcy Court, Southern District of New York 1981.

Also, other Courts have held that rights under insurance policies are "property" of the estate. See *In Re Mego International, Inc.,* 28 B.R. 324, 325, Southern District of New York; *In Re Bragg's Electrical Construction Company,* 6 B.R. 619.

In *Bragg's Electric,* the Court declared:

"The property in the debtor's estate is the insured coverage which has been purchased from the insurance companies and which the debtors wish to retain." It is at 623. See also *In Re O'Neill Enterprises,* 2 B.C.D. 1745 (Fourth Circuit 1977).

In any event, logic as well as case law dictate the conclusion that Manville's insurance is "property" within the meaning and scope of Section 541(a).

However, the recent decision of the Fifth Circuit in Wedgeworth apparently questions this expansive formulation.

In allowing litigants to go forward with direct action suits against Manville's insurers, the Fifth Circuit refused to follow this Court's Order that the automatic stay extend to direct action suits against Manville's insurers.

See *In Re Johns-Manville Corp.,* 26 B.R. 420, 434–437, this Court on rehearing.

The Wedgeworth Court found that the language of 362(a)(1) should be strictly construed and provides only a "narrow protection directed at the Debtor and its estate." *Wedgeworth,* supra, at page 547.

More specifically, the Court noted:

"Those interests are not automatically impinged by suit against the debtor's liability insurer in an instance in which the payments by the insurer cannot inure to the debtor's pecuniary benefit. Such is the situation in the case at bar. A payment by the liability carrier will neither enhance nor decrease the bankruptcy estate." *Wedgeworth,* supra, at page 547.

This statement by the Wedgeworth Court suggests that the insurance policies should not be considered part of the Manville estate because the proceeds cannot go directly to Manville.

However, insurance coverage clearly carries with it rights which vest the Debtor with a property interest in such policies,

regardless of who the immediate beneficiary is.

As mentioned earlier, Congress intended Section 541(a) to include all conceivable forms of property or interests in property. Senate Report Number 95–989, 95th Congress, Second Session 82. See also 4 Colliers on Bankruptcy, Section 541.06, 15th Edition, 1982.

Furthermore, the pool of insurance proceeds is a finite pool with clearly defined parameters.

The fund's contents have a very specific limit; the pool cannot be replaced or replenished.

Therefore, under these circumstances, any forced payment to an asbestos litigant by one of Manville's liability carriers would obviously decrease the pool and leave fewer assets remaining to be divided among other claims.

This effect could seriously undermine the whole purported purpose of Manville's bankruptcy petition, to wit: reasonable compensation for all asbestos victims.

To provide this reasonable compensation, the estate must include all of the insurance policies and proceeds so that all asbestos litigants can be fairly compensated, not just those who are fortunate enough to live in states with direct action statutes.

Accordingly, this Court reaffirms its position that Manville's insurance policies, proceeds and causes of action against its insurers are property of the Manville estate.

It is clear that this Court may, in its discretion, expand the stay as requested by Travelers despite the decision of the Fifth Circuit in Wedgeworth.

Title 28 U.S.C. § 1471(e) provides that the Bankruptcy Court in which a Title II finding is made "shall have exclusive jurisdiction of all property, wherever located, of the Debtor..."

Once the Bankruptcy Court for the Southern District of New York, the Court in which the Manville filing was made, determined that the insurance policies issued to Manville and all the causes of action

arising under those insurance policies constituted "property" of the Debtor under the Bankruptcy Code, that Court assumed jurisdiction regarding the policies.

Interference with the stay Order issued by the Bankruptcy Court is an invasion of that jurisdiction and without effect.

See, for example, *Coleman American Companies against Littleton National Bank,* 8 B.R. 384, 389, which concerned itself with the issuance of a contempt citation against a creditor who filed a Complaint in the Bankruptcy Court in Colorado after the bankruptcy proceedings initiated in Kansas.

See also *Wes-Flo, Inc. against Wilson Freight Company,* 13 B.R. 617, 620–21, Southern District of Ohio, the Bankruptcy Court of the Southern District of Ohio refusing to assume jurisdiction over a removed case when the reorganization proceeding involving the Debtor that was pending in another Bankruptcy Court; only the Bankruptcy Court which has issued a stay may remove or alter the stay. That's part of the holding there.

See also *Credithrift of America, Inc. against Bazan,* 6 B.R. 937, 942 through 943, Bkrtcy. Court Northern District of Illinois 1980, which issued a contempt citation similar to that in Coleman, and invoking the rule that where two in rem actions are brought, the first court to assume jurisdiction over property maintains jurisdiction to the exclusion of the other.

See also *Duggan against Sansberry,* 327 U.S. 499, 508–09, 66 S.Ct. 657, 90 L.Ed. 809 (1946) in disallowing collateral attack of a reorganization proceeding in view of Congress' policy that one Court have exclusive jurisdiction over the Debtor and his property.

See also Mandeville, not Manville, *Mandeville against Cantebury,* 318 U.S. 47, 48–49, 1943, authorizing the Bankruptcy Court to enjoin State Court proceedings interferring with its jurisdiction despite, a statute generally forbidding enjoining State Court proceedings.

See also the *State of Missouri against the United States Bankruptcy Court,* 647

Fed.2d 768–77, the Eighth Circuit in 1981, Cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 in 1982.

That Court declared and I quote:

"Thus even if the automatic stay provisions did not apply to Missouri proceedings, the Bankruptcy Court possesses power in its discretion to enjoin State Court [officials and agencies] from interfering with assets of the Bankruptcy Court".

To the extent that opinion purports to give the Bankruptcy Court power to enjoin a State Court, I think that Court probably was referring to the Courts of bankruptcy and not to Bankruptcy Courts, which do not have powers to stay a Court, but can stay the parties.

To continue where I had left off, where the Court possesses power in its discretion to enjoin State Court proceedings from interfering with assets of the Bankruptcy Court, we continue, the Fifth Circuit's holding that the Bankruptcy Court exceeded its jurisdiction in issuing the stay Order does not bind the Bankruptcy Court.

Congress' plenary power over bankruptcy impowers it to lay down rules that clearly render disabled all but a limited class of Courts.

Compare *Kalb against Feuerstein,* 308 U.S. 433, 438–439, 60 S.Ct. 343, 345–346, 84 L.Ed. 370 A 1940 case, and I quote:

"Congress may render judicial acts taken with respect to the person or property of a Debtor whom the bankruptcy law protects, nullities and vulnerable collaterally."

Congress exercised that power in enacting 28 U.S.C. Section 1471(e), which gives the Bankruptcy Court in which a petition is filed exclusive jurisdiction over the property of the bankrupt.

That jurisdiction is now implemented post Marathon under the Emergency Rule.

In *Coleman American Companies,* supra, 8 B.R. 384, a corporation filed a Chapter 11 petition in the Kansas Bankruptcy Court.

Subsequently a creditor filed a Complaint in the Colorado Bankruptcy Court, and the Colorado Court found that it had jurisdiction.

The Kansas Court cited the creditors for contempt and charged them with the full costs of the Colorado litigation. The Court reasoned that the central purpose of bankruptcy is to afford debtors the ability to bring order to their affairs.

If other Courts were allowed to interfere with the bankruptcy proceeding, a Debtor could not be assured that all litigation respecting his property would be centralized. *Coleman American Companies,* supra, 8 B.R. at 387–89.

Travelers claims that there have been a series of developments constituting relevant facts—and when I use the term Travelers, I think I refer also to Manville in its similar request for relief, joined in after Travelers brought on its motion—Travelers claims that there have been a series of developments constituting relevant facts and circumstances now extant which not only provide a basis for the relief sought, but which mandate the relief.

While the application suggests the necessary and appropriate basis for extension of the stay to former, not just current and key personnel, Manville officers, directors and employees, cause shown on papers under these circumstances are simply not Robust enough to warrant the relief absent an evidentiary hearing.

Travelers posits arguments in support of its application. It contends that the per occurrence provision in the policies provides an absolute limit for plantworker cases.

Travelers feels that this finite insurance pool will be diminished unless all Manville officers, directors and employees are protected.

Again, this assertion is conclusory and not susceptible to a determination by me without an evidentiary hearing.

The purpose of this hearing will be to quantify the extent of the impact of these suits on the insurance pool.

This qualification will allow me to determine whether this impact on the estate

counterbalances the judicial interpretation of the Code favoring limiting the protection of Section 362 to the Debtor only.

Travelers contends that the trial of these cases would present a serious obstacle to informed settlement discussion and the formulation of a reorganization plan because the funds at risk are unknown.

It also protests that it would have to violate terms of its insurance contracts with Manville if pressed to disregard the priority of indemnity payments; the policies oblige Travelers to honor Manville's obligations before those of additional Manville insurers.

In defending these employee suits, Travelers may be able to establish in the California litigation that Manville is not entitled to coverage under its policies, and Travelers would then have administration claim against Manville, which would diminish the Manville estate.

Finally, Travelers claims that these direct actions would impede Manville's efforts to devote its resources and manpower to plan formulation.

Section 362 provides that an automatic stay is applicable to:

> (3) any act to obtain possession of property of the estate or of property from the estate.

Extension of the automatic stay is proper when it "is necessary or appropriate to carry out the provisions of this title." Section 105(a). The stay functions to protect the debtor's estate from suits which would have an adverse financial impact on it. 26 B.R. at 431. A stay extension is akin to a preliminary injunction, *In Re Larmar Estates, Inc.,* 5 B.R. 328, 1980, *In Re Landmark Air Fund II,* 19 B.R. 556, 1982 and, thus, a showing of irreparable harm is required to extend the stay. The *matter of Varisco,* 16 B.R. 634, 1981.

In the present case the extension of the stay beyond this Court's prior orders on grounds that relief is necessary and appropriate and on a showing of irreparable harm should be the subject of a further hearing.

The Bankruptcy Court renders case by case decisions as to whether any particular action excepted from the automatic stay will result in sufficient harm or interference with the bankruptcy case to warrant the issuance of a specific injunction, 2 Colliers on Bankruptcy, Section 105.01, 15th Edition, 1982.

Although this Court today reinforces its holding with respect to the insurance coverage as being an asset or property of the estate, the need for an evidentiary hearing coupled with the prospective revisit by the Fifth Circuit of its Wedgeworth holding precludes a bench ruling on the main relief requested at today's hearing.

It will also alleviate this Court's concern that the respondents be given a full opportunity to take part in that evidentiary hearing.

It is noteworthy that there is nobody here basically contesting the relief requested and yet I must, with all candor, give those parties every opportunity, although they've had, you correct me if I am wrong, Mr. Schlesinger, three opportunities now.

So that I will entertain suggestions for a date for such a hearing. It might also be suggested that Mr. Caton might want to be present to give his input at that hearing.

I was loathe to cut you off, your earlier presentation, but it would be appropriate at a subsequent hearing.

MR. SCHLESINGER: Your Honor, might we have a minute or two to consult so as to have a date that is mutually agreeable.

I would like to consult with my office, if I might, for a minute or two, to see if I can get some input from the client.

May we have—

THE COURT: A five minute recess?

MR. SCHLESINGER: That would be excellent.

THE COURT: Off the record.

(Discussion off the record.)

THE COURT: Is the 9th of August acceptable, Gentlemen?

MR. EDELMAN: The 9th of August at 10:00 o'clock seems to be agreeable.

MR. SCHLESINGER: Yes.

THE COURT: Mr. Schlesinger, you will do the honors with respect to the Defendants?

MR. SCHLESINGER: I will, I will try Express Mail again.

THE COURT: I suggest you get the transcript—

MR. SCHLESINGER: I'll wait for it to-night, we will Xerox it overnight and the dispatcher will take care of it by the morning.

THE COURT: All right, thank you, Gentlemen, I will see you on the 9th of August at 10:00 a.m.